UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No. _____

SFT IV, LLC, MOS18 LLC &
2206 AVENUE A LLC,

        Plaintiffs,

v.

GREAT LAKES INSURANCE SE,

        Defendant.

_____ /

## DEFENDANT'S NOTICE OF REMOVAL

### I. INTRODUCTION

Defendant, Great Lakes Insurance SE ("Great Lakes"), removes the action pending in the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida, Case No. 2023-CA-043363. The Brevard County Circuit Court is within the Orlando Division of the Middle District of Florida. Removal is based on diversity of citizenship pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. §§ 1446(a), (b), and (c), and in accordance with 28 U.S.C. § 1332(a), there being complete diversity of citizenship between Plaintiffs, SFT IV, LLC, MOS18 LLC, & 2206 Avenue A LLC, and Defendant, Great Lakes Insurance SE, and the matter in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

## II. PROCEDURAL BACKGROUND AND COMPLIANCE

This case involves a first-party property insurance claim concerning alleged damage to Plaintiffs' property purportedly caused by Hurricane Nicole.  Compl. at ¶ 7.  Plaintiffs filed a breach of contract lawsuit against Great Lakes in state court on August 15, 2023.[1]   Great Lakes was served with process on October 3, 2023.  However, the Complaint only includes a general allegation regarding the amount in controversy, stating that the "amount in controversy in this action exceeds the sum of Fifty Thousand and One Dollars ($50,001.00), exclusive of pre-judgment interest, court costs, and attorney's fees."  Compl. at ¶ 3.  Indeed, the Complaint is void of any specific allegations regarding the damages sought by the Plaintiffs.  Furthermore, the Complaint does not attach any exhibits in support of Plaintiffs' alleged damages, other than the subject insurance policy.  Therefore, at the time of service, the case was not removable based on the allegations in the initial pleading.

On December 11, 2023, Plaintiffs' counsel communicated a written settlement demand via email to Defendant's counsel to resolve the allegations pleaded in the Complaint.  Plaintiffs' demand exceeds $75,000.00, exclusive of interest and costs.  Accordingly, Plaintiff's demand constitutes an "other paper" under 28 U.S.C. 1446(b)(3), thus making the action removable.  Therefore, Great Lakes' deadline for removal is January 10, 2024, and this notice is timely pursuant to 28 U.S.C. §

---

[1] A current and correct copy of the Brevard County Circuit Court's progress docket is attached as **EXHIBIT A**.

2

1446(b)(3).  *See*, *Chabad Lubavitch of Pembroke Pines, Inc. v. GeoVera Specialty Ins. Co.*, Case No. 21-CV-61420-RAR, 2021 WL 5155718 at *3 (S.D. Fla. Nov. 5, 2021) ("The document triggering Defendant's 30 days to file a notice of removal was Plaintiffs' [post-litigation] written settlement demand, and Defendant properly removed during this period."); *4649 NW 36 St., LLC v. Scottsdale Ins. Co.*, No. 20-24546-CIV-WILLIAMS/MCAILILEY, 2021 WL 883495 at *3 (S.D. Fla. Feb. 21, 2021) ("This settlement offer, which is a document that Defendant received from Plaintiff after litigation commenced, constitutes 'other paper' and began the 30-day removal deadline."); *Gallion v. Zoe's Restaurants, LLC*, 524 F.Supp. 3d 1236, 1242 (M.D. Ala. 2021) ("There is little dispute that a settlement offer can constitute an 'other paper' within the meaning of 28 U.S.C. § 1446(b)") (citing to *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1213 n.62 (11th Cir. 2007); *Gleaton & Demaria Comm. Dev., LLC v. Westchester Surp. Lines Ins.*, No. 3:18-CV-1913-MCR-GRJ, 2018 WL 8496001 (N.D. Fla. Sep. 21, 2018) ("Regarding settlement offers, courts differentiate between pre-suit and post-suit settlement demands, considering post-suit settlement demands as 'other paper' for the purpose of ascertaining that the case is removable, thereby triggering the thirty-day filing period.").

The plain language of 28 U.S.C. § 1446(b)(3) requires that if an "other paper" is to start the thirty-day time period, a defendant must receive the "other paper" after receiving the initial pleading.  *Chapman v. Powermatic, Inc.,* 969 F.2d 160, 164 (5th Cir. 1992).  The second paragraph of § 1446(b) applies by its terms only "if the case

stated by the initial pleading is not removable . . .."  28 U.S.C. § 1446(b).
Importantly, the second paragraph of § 1446(b) requires that the defendant remove
the case, if at all, within 30 days after receipt of an "other paper" from which the
defendant may first ascertain that the case is removable.  *Chapman*, 969 F.2d at 164.
Logic dictates that a defendant can "first" ascertain whether a case is removable from
an "other paper" only after receipt of both the initial pleading and that "other paper";
and therefore, the thirty-day time period begins to run, not from the receipt of the
initial pleading, but rather from the receipt of the "other paper" revealing that the
case is removable.  *Id*.  Accordingly, this notice is timely pursuant to 28 U.S.C. §
1446(b)(3).

Copies of all process, pleadings, and orders served upon Great Lakes are
attached as **COMPOSITE EXHIBIT B** in compliance with 28 U.S.C. § 1446(a).  Great
Lakes will file any supplemental papers not available as of the date of this notice if
it becomes necessary.

Contemporaneously with the filing of this notice of removal, Great Lakes has
served a notice of filing notice of removal upon Plaintiffs as required by 28 U.S.C.
§ 1446(d), a copy of which (without exhibits) is attached as **EXHIBIT C**.  The original
notice, with exhibits, is being filed with the clerk of the state court in accordance
with 28 U.S.C. § 1446(d).

Great Lakes is the only defendant named in this action, and it may remove the action without seeking the consent of any other party. *See White v. Bombardier Corp.*, 313 F.Supp.2d 1295, 1299-1300 (N.D. Fla. 2004); 28 U.S.C. § 1446(b).

As 28 U.S.C. § 1446(a) also requires, the grounds for removal are set forth below.

### III. SUMMARY OF THE GROUNDS FOR REMOVAL

As further demonstrated herein, this action is removable to this Court given that there is a complete diversity of citizenship between the Parties and the matter in controversy exceeds $75,000 pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. §§ 1446(a), (b), and (c), and in accordance with 28 U.S.C. § 1332(a).

28 U.S.C. § 1332(a)(2) provides in pertinent part:

(a)  The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

…

(2)  citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;

28 U.S.C. § 1332(a)(2).

## A.    The Amount in Controversy exceeds $75,000 and is Evidenced by Plaintiffs' Post-Suit Demand.

In setting forth the amount in controversy, "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the

jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (citing 28 U.S.C. § 1446(a)).  But if there is a dispute regarding the amount in controversy, the burden rests on the defendant to prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold.  *Id*. at 88.  (quoting 28 U.S.C. § 1446(c)(2)(B)).

However, "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it.  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).  "Where, as in this case, the complaint alleges an unspecified amount of damages, 'the district court is not bound by the plaintiff's representations regarding its claim,' and may review the record for evidence relevant to the amount in controversy."  *DO Rests., Inc. v. Aspen Specialty Ins. Co.*, 984 F.Supp. 2d 1342, 1344 (S.D. Fla. 2013) (citing *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010)).  The Court may also use its judicial experience and make reasonable inferences and deductions to determine the amount in controversy.  *See Roe*, 613 F.3d at 1061-62; *Pretka*, 608 F.3d at 754 (discussing the difference between reasonable deductions and inferences with "conjecture, speculation, or star gazing"); *E.S.Y., Inc. v. Scottsdale Ins. Co.*, 217 F.Supp. 3d 1356, 1360 (S.D. Fla. 2015).

On December 11, 2023, Plaintiffs' counsel served a written post-suit settlement demand for $1,758,183.18 ($1,893,315.68 in alleged damages *less* the policy's wind deductible of $135,132.50).  Plaintiffs' written demand includes a

breakdown for: (1) building damage ($699,901.69); (2) increase cost of construction ($139,980.34); (3) business interruption ($525,600.00); (4) engineering costs ($9,775.00); (5) interest ($64,758.65); (6) attorney's fees ($448,800.00); and (7) costs ($4,500.00).   In support of the building damage component of the demand, Plaintiffs attach a 128-page detailed repair estimate for $699,901.69, which was prepared by Plaintiffs' retained estimator, Mario Farnesi.   According to the Plaintiffs, the estimate represents the cost of necessary repairs to Plaintiffs' property because of the alleged wind damage purportedly caused by Hurricane Nicole. Numerous courts have concluded that Federal Rule 408 does not make settlement offers inadmissible as evidence of the amount in controversy.  *Coleman v. NPC Int'l, Inc.*, 4:09-CV-50/RS/WCS, 2009 WL 10675080, at *2 (N.D. Fla. Mar. 4, 2009).  *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839 n. 3 (9th Cir. 2002) ("We reject the argument that Fed. R. Evid. 408 prohibits the use of settlement offers in determining the amount in controversy."); *Ray v. American Airlines, Inc.*, No. 08-5025, 2008 WL 3992644, *4 (W.D. Ark. Aug. 22, 2008) ("We agree that Rule 408 does not prohibit the use of a settlement letter to establish the amount in controversy").

Furthermore, when a statute authorizes the recovery of attorney's fees, and the plaintiff has requested attorney's fees, a reasonable amount of those fees is included in the amount in controversy.  *Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 201 (1933); *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000).  Reasonable attorney's fees claimed in insurance cases under Florida

statute are properly considered as part of the total amount in controversy for purposes of diversity jurisdiction. *DO Restaurants, Inc.*, 984 F.Supp. 2d at 1346. "The case at bar involves an insurance contract so there is no dispute that attorney's fees are included in arriving at the amount in controversy." *Lein v. Hartford Fire Ins. Co.,* No. 10-80394-CIV, 2010 WL 11602611, at *4 (S.D. Fla. May 24, 2010 (citing *State Farm Fire & Cas. Co. v. Palma,* 629 So. 2d 830, 832 (Fla. 1993) (finding that the terms of Fla. Stat. § 627.428, which mandates recovery of fees, are an implicit part of every insurance policy). Here, Plaintiffs allege entitlement to attorney's fees pursuant to Section 626.9373, Florida Statutes, which authorizes an award of reasonable attorney's fees upon the rendition of a judgment against a surplus lines insurer[2]. Compl. at ¶ 16. Accordingly, the recovery of attorney's fees is permitted under Florida law and the Plaintiffs have requested fees in the Complaint. *See Id.* Therefore, some measure of reasonable attorney's fees is appropriately included when calculating the amount in controversy.

Therefore, based on Plaintiffs' post-suit written settlement demand, which is at least partially supported by the detailed itemized repair estimate for $699,901.69, the amount in controversy is sufficient to invoke the Court's diversity jurisdiction under 28 U.S.C. § 1332(a)(2).

---

[2] Defendant, Great Lakes Insurance SE, conducts business in Florida on a surplus lines basis. See Office of Insurance Regulation website, https://floir.com/CompanySearch/ (last visited Sept. 29, 2023).

**B.      Complete Diversity of Citizenships Exists Between the Parties.**

**i.      SFT IV, LLC is a Citizen of Georgia.**

According to the Florida Department of State, Division of Corporation, SFT IV, LLC, is an active Florida Limited Liability Company.   A limited liability company is considered a citizen for diversity purposes of each state in which a member is a citizen.   *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.,* 374 F. 3d 1020, 1022 (11th Cir. 2004).   "To sufficiently allege the citizenships of these unincorporated business entities, a party must list the citizenships of all the members of the limited liability company."   *Id.*   Upon information and belief, the sole member of SFT IV, LLC, is Emilia Ruiz Akridge.

According to publicly available records[3], Ms. Akridge is domiciled at 1323 Murdock Rd., Marietta, GA 30062, where she maintains a homestead exemption. Ms. Akridge also maintains an active Georgia voter registration using the same aforementioned address, which is further evidence of her domicile and intent to remain in Georgia.   Therefore, Ms. Akridge is domiciled in Georgia and thus a

---

[3] Available public records can be considered when determining a party's citizenship or domicile; these records could include property records and voter registration. *Brooks v. Sears, Roebuck and Co.*, No. 6:18-cv-5534-Orl-37DCA, 2018 WL 3445421, at *2 (M.D. Fla. Jul. 24, 2018); *Akkan v. Nationstar Mortg. LLC*, No. 1:16-cv-1999-WSD-LTW, 2016 WL 11260335, at *1 (N.D. Ga. Nov. 16, 2016); *Taylor v. American Heritage Church Finance, Inc.*, No. 6:10-cv-559-Orl-31GLK, 2010 WL 2889694, *1-2 (M.D. Fla. Jul. 19, 2010) ("Factors frequently taken into account when assessing the domicile of a party include: the party's current residence; payment of taxes; voter registration and voting practices; driver's license and automobile registration; situs of personal and real property…."); *Jakobot v. American Airlines, Inc.*, No. 10-61576-CIV, 2011 WL 2457915, *4 (S.D. Fla. Jun. 20, 2011); *Matos-Cruz v. JetBlue Airways Corp.*, No. 6:17-cv-380-Orl-37TBS, *1 (M.D. Fla. Aug. 1, 2017).

citizen of Georgia.  Accordingly, since Ms. Akridge is the sole member of SFT IV, LLC, and because she is a citizen of Georgia, SFT IV, LLC, is therefore a citizen of Georgia.

### ii.     Mos18, LLC is a Citizen of Georgia.

According to the Georgia Department of State, Corporations Division, Mos18, LLC, is an active Georgia Limited Liability Company.  Upon information and belief, the sole member of Mos18, LLC, is Emilia Akridge, who, as explained above, is a citizen of Georgia.  Accordingly, since Ms. Akridge is the sole member of Mos18, LLC, and because she is a citizen of Georgia, Mos18, LLC, is therefore a citizen of Georgia.

### iii.    2206 Avenue A LLC is a Citizen of Florida.

According to the Florida Department of State, Division of Corporation, 2206 Avenue A LLC, is an active Florida Limited Liability Company.  Upon information and belief, the sole member of 2206 Avenue A LLC.

According to publicly available records, Shawn T. Kaleta maintains an active Florida voter registration using an address in Manatee County at 102 48th Street, Holmes Beach, Florida 34217.  Mr. Kaleta also has an active Florida Driver License and maintains an active Florida Certified General Contractor License, using the same aforementioned address at Holmes Beach, Florida, which is further evidence of his domicile and intent to remain in Florida.  Therefore, Mr. Kaleta is domiciled in Florida and thus a citizen of Florida.  Since Mr. Kaleta is the sole member of 2206

Avenue A LLC, and because he is a citizen of Florida, 2206 Avenue A LLC, is therefore a citizen of Florida.

### iv.    Defendant Great Lakes is a Citizen of Germany

Defendant, Great Lakes Insurance SE, is organized as Societas Europaea, or "SE," and is a European corporation pursuant to the corporate laws of the European Union.  In determining the citizenship of an SE for federal diversity jurisdiction purposes, the district court in *SNC-Lavalin Constructors Inc. v. Tokio Marine Kiln Insurance Limited, Certain Underwriters at Lloyd's*, Civ. Nos. GJH-19-873 and GJH-19-1510, 2021 WL 2550505 (D. Md. June 21, 2021) found that an SE had all of the features of a U.S. corporation.  *Id*. at *9.  Accordingly, the court concluded that an SE should be treated like a U.S. corporation for the purposes of diversity jurisdiction.  *Id*.  Therefore, when determining Great Lakes' citizenship, it is a citizen of both its state of incorporation and principal place of business for purposes of diversity jurisdiction.  28 U.S.C. § 1332(c)(1).

Great Lakes' registered office is in Munich, Germany, entered into the commercial register of the local court in Munich under HRB 230378.  Furthermore, Great Lakes' principal place of business is at Königinstrasse 107, 80802 Munich, Germany.  Accordingly, Great Lakes' state of incorporation and principal place of business are both Munich, Germany, and Defendant is therefore a citizen of Germany.

Therefore, because Plaintiffs are citizens of Georgia and Florida and Defendant is a citizen of Germany, there is complete diversity between the parties.

**B.  This Action Is Filed in Brevard County, Located Within the Orlando Division of This Court**

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

Here, Plaintiffs have filed this action in the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida, thereby submitting to the jurisdiction of Brevard County as the proper venue.  Brevard County is located in the Orlando Division of this Court.  Accordingly, removal to the Orlando Division of this Court is proper pursuant to 28 U.S.C. § 1441(a).

### IV. CONCLUSION

Removal is proper pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. §§ 1446(a), (b), and (c), and in accordance with 28 U.S.C. § 1332(a), there being complete diversity of citizenship between the Plaintiffs and the Defendant, and the matter in controversy, exclusive of interest and costs, exceeds $75,000.  Great Lakes has met all procedural requisites for removal, and this notice is timely filed.  Accordingly, Great Lakes respectfully requests the Court take jurisdiction and conduct all further proceedings in this case.

Submitted this December 18, 2023.

By:  */s/ David B. Levin*
David B. Levin (Lead Counsel)
Florida Bar No.: 026394
dlevin@bakerdonelson.com
Brian W. Fernandez
Florida Bar No.: 1029848
bfernandez@bakerdonelson.com

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
1 Financial Plaza, Suite 1620
100 SE 3rd Avenue
Fort Lauderdale, Florida 33394
Telephone: (954) 768-1600

Attorneys for Great Lakes

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 18, 2023, I served a copy of the foregoing

Notice of Removal electronically via CM/ECF or via U.S. mail to all

parties/attorneys on the list to receive service/notice in this case, including but not

limited to the following:

Andrew P. McDonald
David D. Barnhill
Ryan L. Gontrum
McDonald & Barnhill, P.A.
505 S. Magnolia Ave.
Tampa, FL 33606
eservice@mcdonaldbarnhill.com
Attorneys for Plaintiffs

*/s/ David B. Levin*

# BECA

## Brevard Electronic Court Application

---

Case Number: 05-2023-CA-043363-XXXX-XX

Case Type: CI

Date Filed: 08/15/2023

Case Status: ORIGINAL PENDING

Status Date: 08/15/2023

Judge: CURT JACOBUS

Jurisdiction: CENTRAL

Charging Agency: NONE

---

### Participants

| Type | Name | DL Number | Race | Gender | DOB | Address 1 | Address 2 | City State Zip |
|---|---|---|---|---|---|---|---|---|
| DEFENDANT (1) | GREAT LAKES INSURANCE SE | | | | | 200 E GAINES ST | | TALLAHASSEE, FL 32399-6502 |
| ATTORNEY FOR: D1 | LEVIN DAVID B | | | | | 1 FINANCIAL PLZ STE 1620 | | FORT LAUDERDALE, FL 33394-0048 |
| PLAINTIFF (1) | SFT IV LLC | | | | | NO ADDRESS INFORMATION AVAILABLE | | |
| ATTORNEY FOR: P1 | MCDONALD ANDREW P | | | | | 505 S MAGNOLIA AVE | | TAMPA, FL 33606-2256 |
| PLAINTIFF (2) | MOS18 LLC | | | | | NO ADDRESS INFORMATION AVAILABLE | | |
| ATTORNEY FOR: P2 | MCDONALD ANDREW P | | | | | 505 S MAGNOLIA AVE | | TAMPA, FL 33606-2256 |
| PLAINTIFF (3) | 2206 AVENUE A LLC | | | | | NO ADDRESS INFORMATION AVAILABLE | | |
| ATTORNEY FOR: P3 | MCDONALD ANDREW P | | | | | 505 S MAGNOLIA AVE | | TAMPA, FL 33606-2256 |

### Register of Actions

| Event Date | Document Number | Description | Page Count | Amount |
|---|---|---|---|---|
| 08/15/2023 | 1 | NOTICE OF ATTORNEY DESIGNATION OF EMAIL ADDRESSES | 1 | |
| 08/15/2023 | 2 | NOTICE OF SERVICE OF INTERROGATORIES | 6 | |
| 08/15/2023 | 3 | REQUEST TO PRODUCE | 5 | |
| 08/15/2023 | 4 | COMPLAINT WITH DEMAND FOR JURY TRIAL | 43 | |
| 08/15/2023 | | ASM: CIRCUIT CIVIL FILING FEE | 2 | 401.00 |
| 08/15/2023 | | ORIGINAL FILING UPDATED | 2 | |
| 09/08/2023 | 5 | ADMINISTRATIVE ORDER 21-24 PROPOSED CASE MANAGEMENT PLAN | 2 | |
| 09/08/2023 | 6 | ADMINISTRATIVE ORDER 21-24 PROPOSED CASE MANAGEMENT ORDER | 3 | |
| 09/26/2023 | | ASM: ISSUE CIRCUIT SUMMONS | 2 | 10.00 |
| 09/26/2023 | | PROPOSED SUMMONS TO BE ISSUED | 4 | |
| 09/26/2023 | 7 | ADMINISTRATIVE ORDER 21-24 PROPOSED CASE MANAGEMENT PLAN | 4 | |
| 10/02/2023 | 8 | SUMMONS ISSUED VIA E-MAIL TO ATTORNEY | 2 | |
| 10/25/2023 | 9 | NOTICE OF APPEARANCE AND DESIGNATION OF E-MAIL ADDRESS | 2 | |
| 10/25/2023 | 10 | MOTION FOR EXTENSION | 3 | |
| 10/26/2023 | 11 | ORDER EXTENDING TIME | 1 | |
| 11/07/2023 | 12 | ANSWER AND AFFIRMATIVE DEFENSES | 8 | |
| | | **Total Number of Document Pages** | **90** | |

Complaints



Exhibit A

| Complaint Date | Cause of Action | Disposition Date | Disposition Description |
|---|---|---|---|
| 08/15/2023 | CONTRACT & INDEBTEDNESS | | |

**Financials**

| Name | Receivable | Amount Assessed | Amount Waived | Amount Paid | Due Date | Balance |
|---|---|---|---|---|---|---|
| SFT IV LLC | CIR CIV FILING FEE | $401.00 | $0.00 | $401.00 | | $0.00 |
| SFT IV LLC | ISSUE CIR SUMMONS | $10.00 | $0.00 | $10.00 | | $0.00 |
| **TOTALS:** | | **$411.00** | **$0.00** | **$411.00** | | **$0.00** |
| **TOTAL AMOUNT ELIGIBLE FOR A CIVIL LIEN:** | | | | | | **$0.00** |

**Payments**

| Receipt | Party | Memo | Event Description | Receipt Date | Amount | Payment Type | Received From |
|---|---|---|---|---|---|---|---|
| S260895 | P 1 | EFILING # 182605742 | PMT: ISSUE CIRCUIT SUMMONS | 10/03/2023 | $10.00 | REGULAR CASH | MCDONALD ANDREW P |
| S257946 | P 1 | EFILING # 179654498 | PMT: CIRCUIT CIVIL FILING FEE | 08/23/2023 | $401.00 | REGULAR CASH | MCDONALD ANDREW P |

**Judge History**

| Date Assigned | Case Type | Judge | Description |
|---|---|---|---|
| 08/15/2023 | CONTRACT & INDEBTEDNESS | CURT JACOBUS | INITIAL ASSIGNMENT |

**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**
**IN AND FOR BREVARD COUNTY, FLORIDA**
**CIRCUIT CIVIL DIVISION**

SFT IV, LLC,
MOS18 LLC &
2206 AVENUE A LLC,
        **Plaintiffs,**

                                             **Case No.:**

v.

**GREAT LAKES INSURANCE SE,**
        **Defendant.**
_____/

## DESIGNATION OF EMAIL ADDRESS PURSUANT TO
## FLORIDA RULE OF JUDICIAL ADMINISTRATION 2.516

        COME NOW, the Plaintiffs, by and through their undersigned counsel, and file their Designation of Email Address Pursuant to Florida Rule of Judicial Administration 2.516 as follows:

Primary email address:

eservice@McDonaldBarnhill.com

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by the Service of Process Unit at the State of Florida Department of Financial Service concurrently with the Complaint which has been filed with the Clerk of the Circuit Court, In and For Brevard County, Florida on this 15th day of August, 2023.

                        Respectfully submitted,

                        *s/Andrew P. McDonald*_____
                        Andrew P. McDonald, Esquire, No.: 805661
                        David D. Barnhill, Esquire, No: 90442
                        Ryan L. Gontrum, Esquire, No: 1004730
                        McDonald & Barnhill, P.A.
                        505 S. Magnolia Ave
                        Tampa, FL 33606
                        (813) 265-2020 telephone
                        (813) 200-2030 facsimile
                        Attorneys for Plaintiffs
                        eservice@mcdonaldbarnhill.com

**Composite Exhibit B**

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
## IN AND FOR BREVARD COUNTY, FLORIDA
## CIRCUIT CIVIL DIVISION

**SFT IV, LLC,**
**MOS18 LLC &**
**2206 AVENUE A LLC,**
      **Plaintiffs,**

                              **Case No.:**

**v.**

**GREAT LAKES INSURANCE SE,**
      **Defendant.**
_____/

### PLAINTIFF, SFT IV, LLC 'S NOTICE OF SERVING
### FIRST SET OF INTERROGATORIES

      PLEASE TAKE NOTICE that the Plaintiff, SFT IV, LLC has served a copy of Plaintiff's First Set of Interrogatories to GREAT LAKES INSURANCE SE, by Service of Process Unit at the State of Florida Department of Financial Service concurrently with the Complaint which has been filed with the Clerk of the Circuit Court in Brevard County on this 15th day of August, 2023. The original Notice hereof has been or will hereafter be furnished to the Clerk of Circuit Court, in and for Brevard County, Florida, for filing.

### CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by the Service of Process Unit at the State of Florida Department of Financial Service concurrently with the Complaint which has been filed with the Clerk of the Circuit Court, In and For Brevard County, Florida on this 15th day of August, 2023.

                      Respectfully submitted,

                       _s/Andrew P. McDonald_
                       Andrew P. McDonald, Esquire, No.: 805661
                       David D. Barnhill, Esquire, No.: 90442
                       Ryan L. Gontrum, Esquire, No: 1004730
                       McDonald & Barnhill, P.A.
                       505 S. Magnolia Ave
                       Tampa, Florida 33606
                       (813) 265-2020 telephone
                       (813) 200-2030 facsimile
                       Attorneys for Plaintiffs
                       eservice@mcdonaldbarnhill.com

**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**
**IN AND FOR BREVARD COUNTY, FLORIDA**
**CIRCUIT CIVIL DIVISION**

**SFT IV, LLC,**
**MOS18 LLC &**
**2206 AVENUE A LLC,**
               **Plaintiffs,**

                                          **Case No.:**

**v.**

**GREAT LAKES INSURANCE SE,**
               **Defendant.**
_____/

### PLAINTIFF, SFT IV, LLC 'S FIRST SET OF INTERROGATORIES

     In accordance with Rules l.280 and l.340 of the Florida Rules of Civil Procedure, the Defendant is hereby required within forty five (45) days after service hereof to answer the attached Interrogatories numbered l through 12 in writing and under oath, to insert said answers upon the original and copy served, and to serve copies to all counsel of record pursuant to the Rules.

DEFINITIONS

     A.     When used herein "you" or "your" shall mean GREAT LAKES INSURANCE SE, (hereinafter "GREAT LAKES"), its partners, agents, servants, employees, attorneys, expert witnesses, accountants, auditors and all persons over whom it has control or who have been hired, retained or employed for any purpose by it, whether directly by it or through any other person or entity.

     B.     As used herein the term "document" or "documents" mean any and all information in tangible form and shall include, without limiting the generality of the foregoing, all letters, telegrams, telexes, teletypes, correspondence, contracts, drafts, agreements, notes to file, reports, memoranda, mechanical or electronic recordings or transcripts of such recordings, blueprints, flow sheets, calendar or diary entries, memoranda or telephone or personal conversations, memoranda of meetings or conferences, studies, reports, inter-office and intra-office communications, quotations, offers, inquiries, bulletins, circulars, statements, manuals, summaries, newsletters, compilations, maps, etc.

C.      As used herein "communication" means the transmission, sharing or exchange of information or knowledge in any form, by one with another.

D.      As used herein the term "person" means any individual, corporation, partnership, joint venture, group, association, body politic, government agency, unit or other organization.

E.      To "identify a document" shall mean to state with respect thereto:

A.  The identity of the person who prepared it;

B.  The identity of the person who signed it or in whose name it was issued;

C.  The identity of each person to whom it was addressed or distributed;

D.  The nature or substance of the document with sufficient particularity to enable it to be identified;

E.   Its date, and if it bears no date, the date when it was prepared; and

F.   The physical location of the document and the custodian or custodians thereof.

F.  To "identify a person" with reference to a natural person means to give his name, his last known address and if employed, the name and address of his employer and his job title or position. To identify a person who is not an individual, means to state the name and principal office of such person.

## **INTERROGATORIES**

1. State the name, title, address and phone number of each person(s) who assisted in the formulation of the answers to these Interrogatories.
2. State the name, address, phone number and title of each person(s) who had any role, whatsoever, in analyzing or adjusting the insurance claim of PLAINTIFF, for the damages and claim which underlie this litigation, giving a brief description of each person's responsibilities and actions regarding this matter.
3. State the names, addresses, phone numbers and titles of the following:
   a. Any person known to you or your attorneys who has any relevant knowledge of the issues, which form the basis of this litigation, whether or not that knowledge supports your position, and state the nature or general substance of each person(s) knowledge.
   b. All persons believed or known by you to have heard or who is purported to have heard anyone on behalf of PLAINTIFF make any communication concerning the subject matter of the Complaint and state the substance of each communication.
   c. All persons believed or known by you to have heard or who is purported to have heard PLAINTIFF make any communication concerning the subject matter of the Complaint and state the substance of each communication.
4. State with specificity all contractual amounts owed to PLAINTIFF by GREAT LAKES as a result of the loss and damage, which forms the basis of this litigation, whether or not payment has been tendered to PLAINTIFF.
5. With respect to each amount listed in the preceding interrogatory:
   a. Identify the specific provision of the contract of insurance, which provides the basis for the amount owed.
   b. Disclose with specificity sufficient to effect service of process the identity of every person and entity upon whom GREAT LAKES relies in determining the amounts owed to PLAINTIFF.
6. State whether PLAINTIFF made any previous claims to GREAT LAKES on the policy of insurance that is the subject of this litigation, or any other policy with GREAT LAKES, and for each previous claim state:
   a. The nature of the claim
   b. The date of the claim
   c. The amount claimed; and
   d. The amount paid by GREAT LAKES on this claim.
7. Identify by name, author and date of report, all reports, estimates, evaluations, appraisals, or similar documents prepared by or on behalf of GREAT LAKES concerning any aspect of the loss and damage that underlies this litigation.
8. Identify by name and address all persons participating in or assisting in the preparation of the following:
   a. Any inventory, lists, etc. of the real and/or personal property of PLAINTIFF damaged or destroyed in the loss that underlies this litigation.
   b. Any and all statements and/or proofs of loss filed with GREAT LAKES by or on behalf of PLAINTIFF.

9. Identify all expert witnesses you have retained or consulted which you will or may call to testify at the trial of this litigation and state the subject matter to which each is expected to testify.

10. Disclose with specificity sufficient to effect service of process the identity of all information bureaus and third-party sources from which GREAT LAKES has sought information about PLAINTIFF and for each such information bureaus or third-party source state the exact information requested and the information obtained.

11. Disclose with specificity sufficient to effect service of process the identity of all information bureaus and third-party sources to which GREAT LAKES has provided any information about PLAINTIFF and for each such information bureau or third-party source state the exact information provided.

12. List all payments by GREAT LAKES to, or on behalf of PLAINTIFF, stating the amount of payment, the date of payment, the exact coverage for which payment was made (e.g. damage to personal property), and for persons or entities other than PLAINTIFF, the name and address of the person or entity to whom payment was made.

GREAT LAKES INSURANCE SE


By_____

Title_____


STATE OF _____

COUNTY OF_____

      Sworn to and subscribed before me this _____ day of_____, 2023,

by_____ as _____ of DEFENDANT, who is personally known to

me or who has produced _____as identification.


_____
Notary Public


_____
Name of Notary (Typed, Printed or Stamped)

My Commission Expires:

Case 6:23-cv-02420-ACC-RMN Document 1 Filed 12/18/23 Page 23 of 99 PageID 23

**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**
**IN AND FOR BREVARD COUNTY, FLORIDA**
**CIRCUIT CIVIL DIVISION**

SFT IV, LLC,
MOS18 LLC &
2206 AVENUE A LLC,
         **Plaintiffs,**

                                  **Case No.:**

v.

GREAT LAKES INSURANCE SE,
         **Defendant.**
_____/

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION TO DEFENDANT

COME NOW the Plaintiffs, by and through the undersigned attorneys, and pursuant to the Florida Rules of Civil Procedure propounds Plaintiffs' First Request for Production to Defendant, Great Lakes Insurance SE, a response to which is due forty-five (45) days from the service hereof.

## DEFINITION OF TERMS

As used in this Request for Production, the following terms and definitions are intended to apply:

A.      When used herein "you" or "your" shall mean DEFENDANT, its partners, agents, servants, employees, attorneys, expert witnesses, accountants, auditors and all persons over whom it has control or who have been hired, retained or employed for any purpose by it, whether directly by it or through any other person or entity.

B.      As used herein the term "document" or "documents" mean any and all information in tangible form and shall include, without limiting the generality of the foregoing, all letters, telegrams, telexes, teletypes, correspondence, contracts, drafts, agreements, notes to file, reports, memoranda, mechanical or electronic recordings or transcripts of such recordings, blueprints, flow sheets, calendar or diary entries, memoranda or telephone or personal conversations, memoranda of meetings or conferences, studies, reports, inter-office and intra-office communications, quotations, offers, inquiries, bulletins, circulars, statements, manuals, summaries, newsletters, compilations, maps, etc.

C.      As used herein "communication" means the transmission, sharing or exchange of information or knowledge in any form, by one with another.

D.      As used herein the term "person" means any individual, corporation, partnership, joint venture, group, association, body politic, government agency, unit or other organization.

E.   To "identify a document" shall mean to state with respect thereto:

      1.   The identity of the person who prepared it;

      2.   The identity of the person who signed it or in whose name it was issued;

      3.   The identity of each person to whom it was addressed or distributed;

      4.   The nature or substance of the document with sufficient particularity to enable it to be identified;

      5.   Its date, and if it bears no date, the date when it was prepared; and

      6.   The physical location of the document and the custodian or custodians thereof.

F.      To "identify a person" with reference to a natural person means to give his name, his last known address and if employed, the name and address of his employer and his job title or position.  To identify a person, who is not an individual, means to state the name and principal office of such person.

2

## INSTRUCTIONS FOR USE

1.      All information to be divulged which is in the possession, custody or control of the individual party, its attorney, investigators, agents, employees or other representatives of the named party and its attorney.  If the party does not physically have a copy of the documents, but the party has a right to request a copy of the documents from the person or entity that has a copy of the documents, the party must obtain a copy and produce the document.

2.      If any attorney/client privilege or any other privilege is claimed as to any document called for by this request, the response shall state the date of the document, the name and address of the person who prepared it and the person to whom it was directed or circulated and the name and address of the person now in possession of the document, a description of the subject matter of the document, and the specific nature of the privilege claimed with respect to the document.

## DOCUMENTS TO BE PRODUCED

1. Any and all estimates, reports and/or payments issued by Defendant and/or its representatives to Plaintiff and/or its representatives regarding any and all insurance claims made within the last ten (10) years.

2. Any and all correspondence between the PLAINTIFF, including persons acting on behalf of PLAINTIFF, and the Defendant, including its agents, regarding the subject matter of the instant litigation.

3. Any and all photographs or video reproductions of the insured property whether taken before or after the loss which is the subject matter of this litigation.   **PLEASE PRODUCE COLOR PHOTOGRAPHS IN RESPONSE TO THIS REQUEST**

4. Any and all statements, in whatever form or media, taken by the Defendant regarding the loss which is the subject matter of this litigation.

5. Any and all statements, in whatever format or media, and transcripts of all statements, given by the PLAINTIFF to the Defendant.

6. Copies of any and all investigative reports by any person or organization regarding the loss, made prior to the filing of the lawsuit.

7. Any and all experts' reports pertaining to the cause of the subject loss.

8. All inter-office memoranda or other form of written communication of any employee of the defendant relating to the continued processing of the claim made prior to the filing of the lawsuit.

9. Any materials, documents or tangible things provided to the Defendant or its agents by the PLAINTIFF, or persons acting on behalf of PLAINTIFF, following the loss.

3

10. The underwriting file pertaining to the subject risk and the subject policy of insurance to the present time, including but not limited to the file folder or file folders themselves, exhibit folder, all papers, documents and investigative reports directly pertaining to the aforementioned insurance policy of the subject risk, including but not limited to inter-office memoranda or those pertaining to the above-mentioned policy of insurance or any and all written communications or statements made between the Defendant and other parties, which directly pertain to the subject policy of insurance to the PLAINTIFF.

11. Any materials, documents or tangible things obtained as the "agency file" or agent's file.

12. All appraisals of loss or value of loss prepared by, for, or on behalf of the Defendant regarding the subject losses of the PLAINTIFF.

13. All estimates of loss pertaining to real or personal property of the PLAINTIFF.

14. Copies of any diagrams, models, drawings, sketches, blueprints or any other reproduction of the subject risk made before or after the subject loss.

15. Copies of any and all property claims manuals of the Defendant which, in any way, pertain to the handling of property losses and any manuals or portions thereof which would pertain to the methods, procedures and practices of the Defendant regarding the handling of the PLAINTIFF's claim with the Defendant.

16. Copies of any and all Proof of Loss forms with supporting documents, if any.

17. The complete claims file pertaining to the claims of the PLAINTIFF from the date of the loss to the time of the filing of the lawsuit. *__If any portion of the claims file is withheld under a claim of privilege, produce a detailed privilege log containing sufficient information to identify each document or item withheld and the privilege claimed with respect to each document or item withheld.__*

18. Any and all written communication between the Defendant and any third party concerning the processing of the PLAINTIFF's claim.

19. All investigative reports concerning the PLAINTIFF's claim and all written communications between the Defendant and any third party concerning said report(s).

20. All inter-office memoranda or other form of written communication of any employee of the Defendant concerning any portion of the PLAINTIFF's claim.

21. All investigative reports of the Defendant concerning the PLAINTIFF, taken by or on behalf of the Defendant, concerning any portion of PLAINTIFF's claim.

22. Any and all materials received from the PLAINTIFF, or persons acting on behalf of

4

PLAINTIFF, regarding the subject matter of the instant litigation that has not been produced in response to any other Request to Produce from PLAINTIFF.

23. Copy of the insurance policy, certified as true and accurate as of the date of loss.

24. Copies of all payments, in whatever form or media, made to or on behalf of PLAINTIFF.

25. Those documents which Defendant contends constitute an evidentiary basis to support each one of its Affirmative Defenses.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by the Service of Process Unit at the State of Florida Department of Financial Service concurrently with the Complaint which has been filed with the Clerk of the Circuit Court, In and For Brevard County, Florida on this 15th day of August, 2023.

Respectfully submitted,

_s/Andrew P. McDonald_
Andrew P. McDonald, Esquire, No.: 805661
David D. Barnhill, Esquire, No.: 90442
Ryan L. Gontrum, Esquire, No: 1004730
McDonald & Barnhill, P.A.
505 S. Magnolia Ave
Tampa, Florida 33606
(813) 265-2020 telephone
(813) 200-2030 facsimile
Attorneys for Plaintiffs
eservice@mcdonaldbarnhill.com

5

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
## IN AND FOR BREVARD COUNTY, FLORIDA
## CIRCUIT CIVIL DIVISION

**SFT IV, LLC,**
**MOS18 LLC &**
**2206 AVENUE A LLC,**
           **Plaintiffs,**

                                    **Case No.:**

**v.**

**GREAT LAKES INSURANCE SE,**
           **Defendant.**
_____/

### COMPLAINT FOR BREACH OF CONTRACT
### AND DEMAND FOR JURY TRIAL

    COME NOW the Plaintiffs, SFT IV, LLC, MOS18 LLC and 2206 AVENUE A LLC, by and through the undersigned attorney, and file this Complaint against the Defendant, Great Lakes Insurance SE, and as grounds therefore, state as follows:

### General Allegations

1.    At all times relevant hereto, SFT IV, LLC, MOS18 LLC and 2206 AVENUE A LLC owned and maintained the subject property in Brevard County, Florida.

2.    At all times relevant hereto, the Defendant, Great Lakes Insurance SE, is a surplus lines carrier and is registered with the Florida Department of Insurance and as such permitted to transact business in the State of Florida.

3.    The amount in controversy in this action exceeds the sum of Fifty Thousand and One Dollars ($50,001.00), exclusive of pre-judgment interest, court costs, and attorney's fees.

### Count 1: Breach of Contract

4. Plaintiffs reallege each and every allegation set forth in Paragraphs 1 through 3 above, as if fully set forth herein.

5. This is an action for damages for breach of insurance contract against Great Lakes Insurance SE.

6. In consideration of the premium paid to it, Great Lakes issued to Plaintiffs a contract of insurance, Policy No.: RK77364A22, which was in full force and effect at the time of the loss and damage at the insured premises located at 3455 Highway A1A, Melbourne Beach, Florida 32951. Plaintiffs have attached hereto as Exhibit "A" a copy of the subject insurance policy.

7. On or about November 9, 2022, during the effective period of the insurance policy, Plaintiffs' property was damaged as a result of Hurricane Nicole.

8. The loss and damage to the Plaintiffs' property resulted from a peril for which the policy of insurance issued by Defendant provides coverage.

9. The windstorm damage caused Plaintiffs to sustain loss to covered structures and other property.

10. The loss and damage has caused Plaintiffs to incur additional expenses.

11. Plaintiffs have made a timely claim for the damage and loss.

12. Plaintiffs have requested that Great Lakes pay their damages in full, but Great Lakes has failed and refused to fully pay the aforementioned damages.

13. The Plaintiffs have done and performed all those matters and things properly required of them under the insurance policy or, alternatively, have been excused from performance by the acts, representations, and/or conduct of Great Lakes.

14. Notwithstanding the foregoing, Great Lakes has failed or refused to provide coverage under the insurance policy and has failed to pay promptly the amounts due and has thereby breached the contract of insurance.

15. As a direct result of Great Lakes' breach of the insurance contract, Plaintiffs have been financially damaged and continues to suffer damage and loss.

16. As a result of Great Lakes' breach of the insurance contract, it has become necessary for the Plaintiffs to incur and become obligated for attorney's fees and costs in connection with the prosecution of this action. Plaintiffs are entitled to have Great Lakes pay said fees and costs pursuant to section 626.9373 and/or section 627.70152, Florida Statutes.

WHEREFORE, the Plaintiffs, SFT IV, LLC, MOS18 LLC and 2206 AVENUE A LLC, pray this Court to order Great Lakes Insurance SE to pay in full the contract of insurance, to award the Plaintiffs actual and compensatory damages, pre-judgment interest, costs of this action, attorney's fees, and such other and further relief as this Court may deem appropriate. Further, the Plaintiffs request a trial by jury on all issues so triable.

Date: August 15, 2023                     Respectfully submitted,

                                          _s/Andrew P. McDonald_
                                          Andrew P. McDonald, Esquire, No.: 805661
                                          David D. Barnhill, Esquire, No: 90442
                                          Ryan L. Gontrum, Esquire, No: 1004730
                                          McDonald & Barnhill, P.A.
                                          505 S. Magnolia Ave
                                          Tampa, FL 33606
                                          (813) 265-2020 telephone
                                          (813) 200-2030 facsimile
                                          Attorneys for Plaintiffs
                                          eservice@mcdonaldbarnhill.com

Insured's Name  SFT IV, LLC; Mos18, LLC  & 2206 Avenue A, LLC          Policy # RK77364A22

UMR # _____

(Lloyd's Policies Only)

Policy Dates  From  07/21/2022          To  07/21/2023

Surplus Lines Agents Name          Timothy Ramsey

Surplus Lines Agents Address       11405 North Community House Road, Suite 100 Charlotte NC 28277

Surplus Lines Agents License #     P143369

Producing Agent's Name             INSURANCE OFFICE OF AMERICA INC. - GA -

Producing Agent's Physical Address 100 Galleria Parkway Suite 600 , Atlanta,  GA  30339

**"THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER."**

**"SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY."**

| | | | |
|---|---|---|---|
| Policy Premium | $25,135.00 | Policy Fee | $500.00 |
| Inspection Fee | $135.00 | Provider Fee | $0.00 |
| Tax | $1,273.04 | Service Fee | $15.46 |
| FHCF Assessment | $0.00 | Citizen's Assessment | $0.00 |
| EMPA Surcharge | $4.00 | | |

Surplus Lines Agent's Countersignature

☐ **"THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."**

☐ **"THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."**



This page is the face of the certificate of insurance referenced by the number below and is a part of the certificate.

Certificate No # RK77364A22

Boxes that are not checked ☐ do not apply.

Coinsurance contract: The rate charged in this policy is based upon the use of the coinsurance clause attached to this policy, with the consent of the insured.

## FLORIDA SURPLUS LINES NOTICE (GUARANTY ACT)

☒ THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.

LMA9037
01 September 2013

## FLORIDA SURPLUS LINES NOTICE (RATES AND FORMS)

☒ SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.

LMA9038
01 September 2013

## FLORIDA SURPLUS LINES NOTICE (PERSONAL LINES RESIDENTIAL PROPERTY DEDUCTIBLE)

☐ THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.

LMA9039
01 September 2013

## FLORIDA SURPLUS LINES NOTICE (PERSONAL LINES RESIDENTIAL PROPERTY CO-PAY PROVISION)

☐ THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.

LMA9040
01 September 2013

# CERTIFICATE OF INSURANCE

**THIS INSURANCE** is effected with certain Insurers as detailed herein.

**THIS CERTIFICATE** is issued in accordance with the limited authorization granted by certain Insurers whose names appear in the Schedule attached and in consideration of the Premium specified herein; Insurers do hereby bind themselves each for his own part, and not one for another.

**THE ASSURED** is requested to read this Certificate, and if not correct, return it immediately to the Correspondent for appropriate alteration.

In the event of a claim under this Certificate, please notify the following Correspondent:

**Chesterfield Insurance Brokers Limited**

**via your insurance representative**

## CERTIFICATE PROVISIONS

1.  **This Certificate is subject to the following clauses:**

    a)  Wherever the word "Company" appears in the wording and clauses forming part of this document it shall be substituted by the word "Underwriters" or "Insurers" as applicable.

    b)  Wherever the word "Certificate" appears in the wording and clauses forming part of this document it shall be substituted by the word "Policy".

    c)  Wherever the words "Named Insured" or "Assured" appear, these shall be deemed to mean and read the same.

    d)  Wherever the term US$, $ or USD appears, same shall be deemed to mean and read U S Dollars.

2.  **Signature Required**.  This certificate shall not be valid unless signed by the Intermediary named in item 8 of the attached Declaration Page.

3.  **Correspondent/Intermediary Not Insurer**.  Neither the Correspondent nor the Intermediary is an Insurer hereunder and neither of them is nor shall be liable for any loss or claim whatsoever.  The Insurers hereunder are Great Lakes Insurance SE.

4.  **Cancellation**.  If this certificate provides for cancellation and this certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

5.  **Assignment**.  This certificate shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon by the Intermediary.

6.  **Attached Conditions Incorporated**.  This certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached, or endorsed, all of which are to be considered as incorporated herein.

7.  **Short Rate Cancellation**.  If the attached provisions provide for cancellation, the table below will be used to calculate the short rate proportion of the premium when applicable under the terms of cancellation.

### SHORT RATE CANCELLATION TABLE

| Days Insurance in Force | Per Cent of One Year Premium | Days Insurance in Force | Per Cent of One Year Premium | Days Insurance in Force | Per Cent of One Year Premium | Days Insurance in Force | Per Cent of One year Premium |
|---|---|---|---|---|---|---|---|
| 1 | 5% | 66-69 | 29% | 154-156 | 53% | 256-260 | 77% |
| 2 | 6 | 70-73 | 30 | 157-160 | 54 | 261-264 | 78 |
| 3-4 | 7 | 74-76 | 31 | 161-164 | 55 | 265-269 | 79 |
| 5-6 | 8 | 77-80 | 32 | 165-167 | 56 | 270-273 (9 mos) | 80 |
| 7-8 | 9 | 81-83 | 33 | 168-171 | 57 | 274-278 | 81 |
| 9-10 | 10 | 84-87 | 34 | 172-175 | 58 | 279-282 | 82 |
| 11-12 | 11 | 88-91 (3 mos) | 35 | 176-178 | 59 | 283-287 | 83 |
| 13-14 | 12 | 92-94 | 36 | 179-182 (6 mos) | 60 | 288-291 | 84 |
| 15-16 | 13 | 95-98 | 37 | 183-187 | 61 | 292-296 | 85 |
| 17-18 | 14 | 99-102 | 38 | 188-191 | 62 | 297-301 | 86 |
| 19-20 | 15 | 103-105 | 39 | 192-196 | 63 | 302-305 (10 mos) | 87 |
| 21-22 | 16 | 106-109 | 40 | 197-200 | 64 | 306-310 | 88 |
| 23-25 | 17 | 110-113 | 41 | 201-205 | 65 | 311-314 | 89 |
| 26-29 | 18 | 114-116 | 42 | 206-209 | 66 | 315-319 | 90 |
| 30-32 (1 mo) | 19 | 117-120 | 43 | 210-214 (7 mos) | 67 | 320-323 | 91 |
| 33-36 | 20 | 121-124 (4 mos) | 44 | 215-218 | 68 | 324-328 | 92 |
| 37-40 | 21 | 125-127 | 45 | 219-223 | 69 | 329-332 | 93 |
| 41-43 | 22 | 128-131 | 46 | 224-228 | 70 | 333-337 (11 mos) | 94 |
| 44-47 | 23 | 132-135 | 47 | 229-232 | 71 | 338-342 | 95 |
| 48-51 | 24 | 136-138 | 48 | 233-237 | 72 | 343-346 | 96 |
| 52-54 | 25 | 139-142 | 49 | 238-241 | 73 | 347-351 | 97 |
| 55-58 | 26 | 143-146 | 50 | 242-246 (8 mos) | 74 | 352-355 | 98 |
| 59-62 (2 mos) | 27 | 147-149 | 51 | 247-250 | 75 | 356-360 | 99 |
| 63-65 | 28 | 150-153 (5 mos) | 52 | 251-255 | 76 | 361-365 (12 mos) | 100 |

Rules applicable to insurance with terms less than or more than one year.

A.  If insurance has been in force for one year or less, apply the short rate table for annual insurance to the full annual premium determined as for insurance written for a term of one year.

B.  If insurance has been in force for more than one year.

1. Determine full annual premium as for insurance written for a term of one year.
2. Deduct such premium from the full insurance premium and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.
3. Add premium produced in accordance with items (1) and (2) to obtain earned premium during full period insurance has been in force.

8. **Any provisions or conditions** appearing in any forms attached hereto which conflict with or alter the provisions set out above shall supersede the above provisions insofar as the latter are inconsistent with any provisions or conditions appearing in such attached forms.

9. **Providing Information to Insurers**: Contracts of insurance placed by Bell & Clements Limited are subject to local state and/or US federal law and jurisdiction. Care must be taken to ensure that all legal and regulatory requirements in relation to those contracts, including requirements for disclosure of information to insurers in relation to them, are complied with.

10. **Commission:**
    1. You are entitled to request and Bell & Clements Limited (B&C) are happy to disclose, at any time, information regarding any commission which they may have received as a result of placing your insurance business.
    2. This coverage may have been written with one or more of a number of underwriting facilities granted to B&C, under which a profit commission may or may not become payable to B&C.

11. **Regulation.** Great Lakes Insurance SE is regulated by the Financial Conduct Authority ('the FCA') address as follows:

    The Financial Conduct Authority,
    25 The North Colonnade,
    Canary Wharf,
    London,
    E14 5HS

12. **BELL & CLEMENTS LIMITED COMPLAINTS PROCEDURE**

    **HOW TO MAKE A COMPLAINT**

    Should you wish to make a complaint against Bell & Clements Limited you may do so either in writing or verbally to the Compliance Officer at:

    Bell & Clements Limited,
    55 King William Street,
    London,
    EC4R 9AD

    Telephone Number:   INT + 44 207 283 6222
    Fax Number:         INT + 44 207 283 8222
    Email:              complaints@bellandclements.co.uk

    **BELL & CLEMENTS LIMITED'S COMMITMENT TO CUSTOMERS**

    Bell & Clements Limited are committed to handling all customers' complaints received promptly, fairly and in line with regulatory guidelines.

    We deem a complaint to be any expression of dissatisfaction, whether oral or written, and whether justified or not, from or on behalf of an eligible complainant about the firm's provision of, or failure to provide, insurance.

**This Declaration Page is attached to and forms part of certificate provisions.**

| Previous # | New | Authority Ref # | B0759RP03500A22: 100% | Certificate # | RK77364A22 |
|---|---|---|---|---|---|

1. Name and address of the Assured:

SFT IV, LLC; Mos18, LLC; 2206 Avenue A, LLC
c/o Crown Holdings Group, LLC
4828 Ashford Dunwoody Rd, Suite 400
Atlanta
Dekalb
GA, 30338
USA

2. Effective:    From: 21 July 2022    To: 21 July 2023
both days at 12.01a.m. Local Standard Time at the Location of the Property Insured

3. Insurance is effective with
**Great Lakes Insurance SE**                                            Hereon 100%

4.

| **Sum Insured** | **Coverage** | **Premium** |
|---|---|---|
| A. Building USD 2,077,050<br>B. Business Personal Property USD 100,000<br>C. Business Interruption / Extra Expense<br>USD 525,600 - 1/12th monthly limit of indemnity<br>as per attached schedule<br><br>Limit of Liability USD 2,702,650 any one occurrence | Windstorm and/or Hail Insurance<br><br><br><br>Inspection Fee $135.00<br>Policy Fee $500.00<br>FL SL Tax(4.94%) $1,273.04<br>Stamping Fee(0.06%) $15.46<br>EMPA Fee $4.00<br>**Total: $27,062.50** | USD 25,135.00<br><br>Calculated at 0.93% annual<br><br>USA Hurricane Minimum Earned Premium<br><br>Short rate cancellation provisions to apply |

Situation: as per attached schedule

5. Florida Notice Requirements
Ref 9151 - Data Protection Short Form Information Notice
Bell & Clements Privacy Notice
Windstorm and/or Hail Insurance - Wording 2001AML00009
Deductible 5% of 100% Total Values Declared each occurrence
Values Declared (100%): USD 2,702,650
Ref 5018 - Microorganism Exclusion (Absolute)
Ref 5019 (amended) Asbestos Endorsement - V2 (g)
Ref 5039 (amended) - Business Interruption Extension 12 months one-twelfth basis
Ref 5043 (amended) - Extra Expense Extension 12 months (1/12th basis)
Replacement Cost Value Basis of Valuation as per Wording
Service of Suit as per wording
Ref 1331 - Cancellation Clause (30 days except for non-payment of premium where 10 days) replacing Condition 18. of Wording
Co-insurance Percentage: 90%
Notification of Claims and Proof of Loss as per wording
Ref 464 - War and Civil War Exclusion Clause - replacing Losses Excluded 2. of Wording
Ref 2920a - Terrorism Exclusion Endorsement
Limitations on Coverage for Roof Surfacing: Paragraph B
Ref 2340 - Seepage and Pollution Clause
REF 5401 - Property Cyber and Data Exclusion

Continued/…

.../continued 2

Ref 2962 - Biological or Chemical Materials Exclusion
USA Hurricane Minimum Earned Premium Endorsement (USA) V.2
Ref 3100 - Sanction Limitation and Exclusion Clause
Ref 5390 - U.S. Terrorism Risk Insurance Act of 2002 as amended - Not Purchased Clause

6.  Service of Suit Designee:        Mendes and Mount, 750 Seventh Avenue, New York, NY, 10019-6829, USA

7.  Correspondent:     Chesterfield Insurance Brokers Limited, 1 Minster Court, 5th Floor F, London, EC3R 7AA, USA

8.  The Intermediary negotiating this insurance on behalf of the Correspondent is

**BELL & CLEMENTS LIMITED, 55 King William Street, London, EC4R 9AD**
Lloyd's Broker

Any enquiries or disputes relating to this insurance should be forwarded to the Intermediary, in writing, at this Address

Signature: ............................................................................................  (Authorised Signatory)

Dated:  .................19 August 2022................................

for and on behalf of the Intermediary

This contract of insurance is based upon the information and representations you provided in your application. Depending on the type of information and representations that you provided, the proposed contract of insurance includes certain conditions and/or warranties. Kindly review all the contract of insurance documentation, including any binder, declarations page, policy forms, and endorsements, to familiarize yourself with any conditions and/or warranties included in the contract of insurance. These conditions and/or warranties may require you to take specific actions, to refrain from taking specific actions, to fulfil certain requirements, and/or to verify specific facts. Please be advised that strict compliance with the conditions and/or warranties contained in the contract of insurance is required. If you do not strictly comply with the conditions and/or warranties contained within the contract of insurance, then the insurer, Great Lakes Insurance SE, may deny or limit coverage for any claim submitted by you under the contract of insurance.

**BC**

**BELL & CLEMENTS LIMITED**
Windstorm (GLISE) Confirmation of Cover

| Loc No | Bldg No | Location Address | City | County | State | Zip | Protections | Occupancy | Construction | PC Class | Year Built | Distant to Salt Water |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | 01 | 3455 Highway A1A | MELBOURNE BEACH | BREVARD | Florida | 32951 | | Hotels/Motels | Masonry Non Combustible | 3 | 1959 | 0-5 miles |
| 01 | 02 | 3455 Highway A1A | MELBOURNE BEACH | BREVARD | Florida | 32951 | | Hotels/Motels | Masonry Non Combustible | 3 | 1959 | 0-5 miles |

| Loc No | Bldg No | Year Updated |
|---|---|---|
| 01 | 01 | Roof- 15 |
| 01 | 02 | Roof- 15 |

| Loc No | Bldg No | Building | Business Income | BPP Limit | Total Sum Insured |
|---|---|---|---|---|---|
| 01 | 01 | 1,038,525 | 262,800 | 50,000 | 1,351,325 |
| 01 | 02 | 1,038,525 | 262,800 | 50,000 | 1,351,325 |

## DATA PROTECTION SHORT FORM INFORMATION NOTICE

Your Personal Information Notice

### *Who we are*
We are the Insurer identified in the contract of insurance and/or in the certificate of insurance.

### *The basics*
We collect and use relevant information about you to provide you with your insurance cover or the insurance cover that benefits you and to meet our legal obligations.

This information includes details such as your name, address and contact details and any other information that we collect about you in connection with the insurance cover from which you benefit. This information may include more sensitive details such as information about your health and any criminal convictions you may have.

In certain circumstances, we may need your consent to process certain categories of information about you (including sensitive details such as information about your health and any criminal convictions you may have). Where we need your consent, we will ask you for it separately. You do not have to give your consent and you may withdraw your consent at any time. However, if you do not give your consent, or you withdraw your consent, this may affect our ability to provide the insurance cover from which you benefit and may prevent us from providing cover for you or handling your claims.

The way insurance works means that your information may be shared with, and used by, a number of third parties in the insurance sector for example, insurers, agents or brokers, reinsurers, loss adjusters, sub-contractors, regulators, law enforcement agencies, fraud and crime prevention and detection agencies and compulsory insurance databases. We will only disclose your personal information in connection with the insurance cover that we provide and to the extent required or permitted by law.

### *Other people's details you provide to us*
Where you provide us or your agent or broker with details about other people, you must provide this notice to them.

### *Want more details?*
For more information about how we use your personal information please see our full privacy notice(s), which is/are available online on our website(s) or in other formats on request.

### *Contacting us and your rights*
You have rights in relation to the information we hold about you, including the right to access your information. If you wish to exercise your rights, discuss how we use your information or request a copy of our full privacy notice(s), please contact us, or the agent or broker that arranged your insurance who will provide you with our contact details at:

Bell & Clements Limited
55 King William Street
London, EC4R 9AD
United Kingdom

Telephone:  +44 (0) 20 7283 6222
Email:  MBX-Compliance@bellandclements.co.uk

The Privacy Policy for Bell & Clements Limited can be found at www.bellandclements.com/privacy-policy

REF 9151
25th April, 2018

# PRIVACY NOTICE

BELL & CLEMENTS LTD WILL NOT DISCLOSE ANY NON-PUBLIC PERSONAL INFORMATION CONCERNING THE BUYER TO ANY NON AFFILIATED PARTY OTHER THAN TO THE INSURERS AS REQUIRED BY THEM EXCEPT AS PERMITTED BY LAW.

**SCHEDULE**

**Policy No:** RK77364A22

**Name of Assured:**

SFT IV, LLC; Mos18, LLC; 2206 Avenue A, LLC

**Address of Assured:**

c/o Crown Holdings Group, LLC
4828 Ashford Dunwoody Rd, Suite 400
Atlanta
Dekalb
GA, 30338
USA

**Period of Insurance:**

> **From:** 21 July 2022
>
> **To:** 21 July 2023
>
> both days at 12.01a.m. Local Standard Time at the Location of the Property Insured

**Property and Interest Insured:**

A. Building
B. Business Personal Property
C. Business Interruption / Extra Expense

**Location of the Property Insured:**

3455 Highway A1A, Melbourne Beach, Brevard, FL, 32951, USA

As per attached Schedule

**Sum Insured:**

A. USD 2,077,050
B. USD 100,000
C. USD 525,600 - 1/12th monthly limit of indemnity

Limit of Liability USD 2,702,650 any one occurrence

As per attached schedule

**Deductible:**

5% of 100% Total Values Declared each occurrence

**Values Declared (100%):**

USD 2,702,650

**Co-Insurance Percentage:**

90%

**Notification of Claims To:**

Chesterfield Insurance Brokers Limited
1 Minster Court
5th Floor F
London
EC3R 7AA
UK

**Service of Suit Nominee:**

Mendes and Mount
750 Seventh Avenue
New York
NY, 10019-6829
USA

**Premium:**

USD 25,135.00

Calculated at 0.93% annual

USA Hurricane Minimum Earned Premium

Short rate cancellation provisions to apply

**Dated in London:**   12 August 2022

## WINDSTORM AND/OR HAIL INSURANCE

### INSURING CLAUSE

In consideration of the payment of Premium stated herein and subject to the Exclusions, Conditions and Limitations contained herein, this Policy insures Property specified in the Schedule against Direct Physical Loss or Damage caused by Windstorm and/or Hail occurring during the Period of Insurance as shown in the Schedule.

Windstorm and/or Hail shall mean physical loss or damage caused by the direct action of wind or the direct action of hail, whether accompanied by wind or not, but shall not include any consequential loss or damage from any other ensuing peril.

### LOSSES EXCLUDED

This Policy DOES NOT INSURE AGAINST:

1. Loss or damage arising directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination, however such nuclear reaction, nuclear radiation or radioactive contamination may have been caused.

2. ~~Loss or damage occasioned directly or indirectly by war, invasion, hostilities, acts of foreign enemies, civil war, rebellion, insurrection, military or usurped power or martial law or confiscation by order of any Government or public authority.~~ **(please refer to Ref 464)**

3. Loss or increased cost occasioned by any Civil Authority's enforcement of any ordinance or law regulating the reconstruction, repair or demolition of any property insured hereunder.

4. Loss or damage caused directly or indirectly by frost or cold weather.

5. Loss or damage caused directly or indirectly by subsidence, landslip, ice (other than hail), snow, sleet, sand or dust all whether driven by wind or not.

6. Loss or damage directly or indirectly caused by flood, surface water, waves, tidal waves or tidal water, overflow of streams, rivers, lakes, ponds or other bodies of water, or spray from all of the foregoing, all whether driven by wind or not.

7. Loss or damage caused by backing up of sewers and/or drains; or seepage of any substance.

8. Loss or damage caused to the interior of buildings if such buildings are insured hereby unless loss or damage occurs concurrently with and results from an aperture caused by the windstorm and/or hail.

### PROPERTY EXCLUDED

This Policy does not insure:

1. land (including but not limited to land on which the property is located) or any other naturally occurring substance; or water (other than water contained in plumbing or firefighting installations);

2. shafts, mines, tunnels, wells, ponds, dams, dikes, wharves, piers, jetties, embankments, bulkheads, earthen structures and the like, and any man made property in or under the ground;

3. driveways, pavements, curbing, culverts, and sidewalks;

4. building or structures in process of construction or materials and supplies therefor;

5. power transmission distribution or feeder lines not on the Assured's premises;

6. property in transit;

7. any building or structure, or property contained therein, while such building or structure is vacant and/or unoccupied and/or inoperative for more than thirty (30) days;

8. neon signs and automatic or mechanical and/or electric signs, awnings, glass or any ornamentation or lettering thereon;

9. accounts, bills, currency, money, notes, securities, deeds, evidence of debt and valuable papers;

10. animals, plants and living things of all types;

11. jewellery, precious stones, furs and garments;

12. paintings, object d'art and other items of fine art, trophies and memorabilia;

13. stock that has been left in the open or not contained in buildings which are on permanent foundations and capable of secure storage;

## OTHER INSURANCE

If any other insurance provides coverage for loss or damage covered herein, the other insurance shall be primary and this insurance shall be excess to such other insurance. The Underwriters under this Policy shall have no obligation to make any payment until the sum insured of every other applicable insurance has been paid. Under no circumstances shall this Policy become primary or additional insurance because of the insolvency, bankruptcy or refusal to pay for any other reason of any insurer.

## LOCATIONS INSURED

This Policy insures at the location(s) as stated in the Schedule.

## SUM INSURED

This Policy shall not cover for more than the Sum Insured stated in the Schedule.

## DEDUCTIBLE

Each Occurrence shall be adjusted separately and from the amount of each such adjusted Occurrence, the sum stated in the Schedule shall be deducted.

## VALUES DECLARED (AND INCORRECT DECLARATION PENALTY)

The premium for this Policy has been based on a statement of individual values declared to and agreed by the Underwriters at the inception of this Policy and stated in the Schedule.

If any of the individual values declared are less than the equivalent amount of the Co-insurance percentage, as stated in the Schedule, of the replacement cost values (See Condition 4 "Valuation"), then any recovery otherwise due hereunder shall be reduced in the same proportion that the individual value(s) declared bear to the value(s) that should have been declared and the Assured shall co-insure for the balance.

## OCCURRENCE

The term "Occurrence" shall mean any one loss and/or series of losses arising out of one event. The duration and extent of any one "Occurrence" shall be limited to all losses sustained by the Assured during any period of 72 consecutive hours arising out of the same event.  However no such period of 72 consecutive hours may extend beyond the expiration of this Policy unless the Assured shall first sustain direct physical loss or damage by windstorm and/or hail prior to expiration and within said period of 72 consecutive hours nor shall any period of 72 consecutive hours commence prior to the attachment of this Policy.

## DEBRIS REMOVAL

This Policy also covers, within the Sum Insured, expenses incurred in the removal of debris of property covered hereunder which may be directly destroyed or damaged by Windstorm and/or Hail.

The cost of removal of debris shall not be considered in determination of the valuation of the Property Insured.

## CONDITIONS

1. **Due Diligence**

   The Assured shall use due diligence and do and concur in doing all things reasonable to avoid or diminish any loss of or damage to the Property Insured.

2. **Protection Maintenance**

   It is agreed that any protection provided for the safety of the Property Insured shall be maintained in good order throughout the currency of this Policy and shall be in use at all relevant times, and that such protection shall not be withdrawn or varied to the detriment of the interests of the Underwriters without their consent.

3. **Access To Records**

The Assured shall make available to the Underwriters at all reasonable times, and the Underwriters through their designated representatives shall have the right to inspect and copy at their own expense, during the Period of Insurance and thereafter, all books, papers and other records of the Assured and its agents or brokers in connection with this Policy or the subject matter hereof.

4. **Valuation (see also Values Declared and Incorrect Declaration Penalty)**

For the assessment of premium and for adjustment in the event of loss or damage, settlement of claims shall be based upon the cost of repairing, replacing or reinstating (whichever is the least) on the same site with material of like kind and quality without deduction for depreciation, subject to the following provisions:

(a) The repairs, replacement or reinstatement (all hereinafter referred to as "replacement") must be executed with due diligence and dispatch;

(b) Until replacement has been effected the amount of liability under this Policy in respect of loss shall be limited to the actual cash value at the time of loss or damage;

(c) If replacement with material of like kind and quality is restricted or prohibited by any by-laws, ordinance or law, any increased cost of replacement due thereto shall not be covered by this Policy.

The Underwriters' liability for loss or damage under this Policy shall not exceed the smallest of the following amounts:

(i)    the amount of the Policy limit applicable to the destroyed or damaged property;

(ii)   the replacement cost of the property or any part thereof identical with such property and intended for the same occupancy and use;

(iii)  the amount actually and necessarily expended in replacing said property or any part thereof.

5. **Notification of Claims and Proof of Loss**

The Assured, upon knowledge of any Occurrence likely to give rise to a claim hereunder, shall give immediate written advice thereof to the person(s) or Firm named for that purpose in the Schedule.

The Assured shall render a signed and sworn proof of loss or damage within sixty (60) days after the occurrence of the loss or damage (unless such period be extended by the written agreement of the Underwriters) stating the time, place and cause of the loss or damage, the interest of the Assured and of all others in the property, the sound value thereof and the amount of loss or damage thereto.

6. **Abandonment**

There shall be no abandonment to the Underwriters of any property.

7. **Examination under Oath**

If required by the Underwriters, in the event of a claim being made under this Policy, the Assured, or if a company or other body, then the appropriate representatives, shall submit to examination on oath at such reasonable times and places as may be arranged.

8. **Misrepresentation and Fraud**

This entire Policy shall be void if the Assured has wilfully concealed or misrepresented, in writing or otherwise, any material facts or circumstances concerning this Policy or the subject matter thereof, or if the Assured shall make any attempt to defraud either before or after the loss or damage.

9. **Subrogation and Subrogation Waiver**

If the Underwriters become liable for any payment under this Policy in respect of loss or damage, the Underwriters shall be subrogated, to the extent of such payment, to all the rights and remedies of the Assured against any party in respect of such loss or damage and shall be entitled at their own expense to sue in the name of the Assured. The Assured shall give to the Underwriters all such assistance in his power as the Underwriters may require to secure their rights and remedies and, at the Underwriters request, shall execute all documents necessary to enable the Underwriters effectively to bring suit in the name of the Assured including the execution and delivery of the customary form of loan receipt.

The Underwriters hereon agree that this Policy shall not be invalidated should the Assured waive in writing, prior to the loss or damage affected thereby, any or all rights of recovery against any party for loss or damage occurring to the property described herein. The Underwriters expressly waive subrogation against any subsidiary, parent, associated, or affiliated company of the Assured, but the above waivers shall not apply where the party otherwise protected thereunder is supplying or receiving goods or services for which a reward, recompense or consideration passes between the Assured and such other party.

10. **Salvage and Recoveries**

All salvages, recoveries and payments recovered or received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto.

11. **Legal action against the Underwriters**

No one may bring a legal action against the Underwriters under this Policy unless:

1. There has been full compliance with all of the terms of this Policy; and,

2. the action is brought in the United States of America, in a court having proper jurisdiction, within 2 years after the date on which the direct physical loss or damage occurred.

12. **Arbitration**

If the Assured and Underwriters fail to agree in whole or in part regarding any aspect of this Policy, each party shall, within ten (10) days after the demand in writing by either party, appoint a competent and disinterested arbitrator and the two chosen shall before commencing the arbitration select a competent and disinterested umpire. The arbitrators together shall determine such matters in which the Assured and the Underwriters shall so fail to agree and shall make an award thereon, and if they fail to agree, they will submit their differences to the umpire and the award in writing of any two, duly verified, shall determine the same.

The Parties to such arbitration shall pay the arbitrators respectively appointed by them and bear equally the expenses of the arbitration and the charges of the umpire.

13. **Service of Suit**

This Service of Suit clause will not be read to conflict with or override the obligations of the parties to arbitrate their disputes as provided for in the Arbitration provision within this Policy. This clause is intended as an aid to compelling arbitration or enforcing such arbitration or arbitral award, not as an alternative to such Arbitration provision for resolving disputes arising out of this insurance.

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this clause constitutes or should be understood to constitute a waiver of the Underwriter's rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon the person or persons named in the Schedule and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The person or persons named in the Schedule are authorized and directed to accept service of process on behalf of the Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon the Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

14. **Choice of Law**

This Policy shall be subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provisions of Condition 13, Service of Suit.

15. **Conformity to Statute**

Any terms of this Policy which may conflict with statutes or regulations deemed applicable by a court of competent jurisdiction are amended to conform to the minimum requirements of such statutes or regulations.

16. **Inspection and Audit**

The Underwriters shall be permitted, but not obliged, to inspect the Property Insured at any time.  Neither the Underwriters' right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Assured or others, to determine or warrant that such property is safe.

17. **Assignment**

Assignment or transfer of this Policy shall not be valid except with the written consent of Underwriters.

18. ~~Cancellation~~  (please refer to Ref 1331)

~~This Policy may be cancelled by the Assured at any time by written notice or by surrender of this Policy. This Policy may also be cancelled by or on behalf of the Underwriters by delivering to the Assured or by mailing to the Assured, by registered, certified, or other first class mail, at the Assured's address as shown in this Policy, written notice stating when, not less than thirty(30) days thereafter, the cancellation shall be effective.  The mailing of such notice as aforesaid shall be sufficient proof of notice and this Policy shall terminate at the date and hour specified in such notice.~~

~~If this Policy shall be cancelled by the Assured the Underwriters shall retain the customary short rate proportion of the premium hereon, except that if this Policy is on an adjustable basis the Underwriters shall receive the earned premium hereon or the customary short rate proportion of any minimum or deposit premium stipulated herein whichever is the greater.~~

~~If this Policy shall be cancelled by or on behalf of the Underwriters, the Underwriters shall retain the pro rata proportion of the premium hereon, except that if this Policy is on an adjustable basis the Underwriters shall receive the earned premium hereon or the pro rata proportion of any minimum premium stipulated herein whichever is the greater.~~

~~Payment or tender of any unearned premium by the Underwriters shall not be a condition precedent to the effectiveness of Cancellation but such payment shall be made as soon as practicable.~~

~~If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.~~

2001AML00009

## MICROORGANISM EXCLUSION (ABSOLUTE)

This Policy does not insure any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to:-

"mold, mildew, fungus, spores or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health".

This Exclusion applies regardless whether there is (i) any physical loss or damage to insured property; (ii) any insured peril or cause, whether or not contributing concurrently or in any sequence; (iii) any loss of use, occupancy, or functionality; or (iv) any action required, including but not limited to repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

This Exclusion replaces and supersedes any provision in the Policy that provides insurance, in whole or in part, for these matters.

14/09/2005
REF 5018

## ASBESTOS ENDORSEMENT

A.  This Policy only insures asbestos physically incorporated in an insured building or structure, and then only that part of the asbestos which has been physically damaged during the period of insurance by the following Listed Peril:-

Windstorm or Hail.

This coverage is subject to each of the following specific limitations:-

1.  The said building or structure must be insured under this Policy for damage by that Listed Peril.

2.  The Listed Peril must be the immediate, sole cause of the damage of the asbestos.

3.  The Assured must report to Underwriters the existence and cost of the damage as soon as practicable after the Listed Peril first damaged the asbestos. However, this Policy does not insure any such damage first reported to the Underwriters more than 12 (twelve) months after the expiration, or termination, of the period of insurance.

4.  Insurance under this Policy in respect of asbestos shall not include any sum relating to:-

     (i)   any faults in the design, manufacture or installation of the asbestos;

     (ii)  asbestos not physically damaged by the Listed Peril including any governmental or regulatory authority direction or request of whatsoever nature relating to undamaged asbestos.

B.  Except as set forth in the foregoing Section A, this Policy does not insure asbestos or any sum relating thereto.

REF 5019 (amended)

### BUSINESS INTERRUPTION EXTENSION

In consideration of the premium paid, and subject to the EXCLUSIONS, CONDITIONS AND LIMITATIONS of the Policy to which this Extension is attached, and also to the FOLLOWING ADDITIONAL CONDITIONS, EXCLUSIONS AND LIMITATIONS, this Policy is extended to cover loss resulting from necessary Interruption of Business caused by Direct Physical Loss or Damage, as covered by the Policy to which this Extension is attached, to the Property Insured.

In the event of such Direct Physical Loss or Damage, the Underwriters shall be liable for the actual loss sustained by the Insured resulting directly from such necessary Interruption of Business, but not exceeding the reduction in Gross Earnings, as defined hereafter, less charges and expenses which are not necessary during the Interruption of Business, for a period not to exceed the lesser of:

(a) such length of time as would be required, with the exercise of due diligence and dispatch, to repair, rebuild or replace such part of the property as has been destroyed or damaged,

   or

(b) twelve (12) calendar months,

commencing with the date of such Direct Physical Loss or Damage and not limited by the expiration of this Policy.

Due consideration shall be given to the continuation of normal charges and expenses, including payroll expenses, to the extent necessary to resume operations of the Insured with the same operational capability as existed immediately before the loss.

### CONDITIONS

1.  Direct Loss or Damage

    No claim shall be payable under this Extension unless and until a claim has been paid, or liability admitted, in respect of Direct Physical Loss or Damage to Property Insured under the Policy to which this Extension is attached and which gave rise to Interruption of Business.

    This Condition shall not apply if no such payment shall have been made, or liability admitted, solely owing to the operation of a Deductible in said Policy which excludes liability for losses below a specified amount.

2.  Values Declared (and Incorrect Declaration Penalty)

    The premium for this Extension has been based on a statement of individual values declared to and agreed by the Underwriters at the inception of the Policy and stated in the Schedule.

    If any of the individual values declared are less than the equivalent amount of the Co-insurance percentage, as stated in the Schedule, of the Interruption of Business values, then any recovery otherwise due hereunder shall be reduced in the same proportion that the individual value(s) declared bear to the value(s) that should have been declared and the Insured shall co-insure for the balance.

3. Resumption of Operations

If the Insured could reduce the loss resulting from the Interruption of Business,

(a) by complete or partial resumption of operation of the property,

and/or

(b) by making use of Merchandise, Stock (Raw, In Process or Finished), or any other property at the Insured's locations or elsewhere,

and/or

(c) by using or increasing operations elsewhere,

then such possible reduction shall be taken into account in arriving at the amount of loss hereunder.

4. Expenses to reduce Loss

This Extension also covers such expenses as are necessarily incurred for the purpose of reducing loss under this Extension (except expenses incurred to extinguish a fire), and, in respect of manufacturing risks, such expense, in excess of Normal, as would necessarily be incurred in replacing any Finished Stock used by the Insured to reduce loss under this Extension; but in no event to exceed the amount by which loss under this Extension is thereby reduced. Such expenses shall not be subject to the application of any contribution clause.

## EXCLUSIONS

This Extension does not insure against:

1. increase in loss resulting from interference at the insured premises, by strikers or other persons, with rebuilding, repairing or replacing the property or with the resumption or continuation of operation;

2. increase in loss caused by the suspension, lapse, or cancellation of any lease, licence, contract, or order, unless such results directly from the insured Interruption of Business, and then Underwriters shall be liable for only such loss as affects the Insured's earnings during, and limited to, the period of indemnity covered under this Policy;

3. increase in loss caused by the enforcement of any ordinance or law regulating the use, reconstruction, repair or demolition of any property insured hereunder;

4. loss of market or any other consequential loss.

## LIMITATIONS

1. The Underwriters shall not be liable for more than the smaller of either:

(a) any specific Business Interruption Sum Insured stated in the Schedule,

or

(b) the Sum Insured stated in the Schedule, where such includes Business Interruption, if such is a combined limit,

in respect of such loss, regardless of the number of locations suffering an interruption of business as a result of any one occurrence. The most the Underwriters will be liable to pay for loss of Gross Earnings in each calendar month is **one-twelfth (1/12th)** of the specific Business Interruption Sum Insured stated in the Schedule.

2. With respect to loss resulting from damage to or destruction of media for, or programming records pertaining to, electronic data processing or electronically controlled equipment, by the perils insured against, the length of time for which the Underwriters shall be liable hereunder shall not exceed:

   (a) thirty (30) consecutive calendar days or the time required with exercise of due diligence and dispatch to reproduce the data thereon from duplicates or from originals of the previous generation, whichever is less; or,

   (b) the length of time that would be required to rebuild, repair or replace such other property herein described as has been damaged or destroyed, but not **exceeding twelve (12) calendar months**,

   whichever is the greater length of time.

## DEFINITIONS

1. Gross Earnings are for the assessment of premium and for adjustment in the event of loss defined as,

   The sum of:

   (a) total net sales value of production or sales of Merchandise,

      and

   (b) other earnings derived from the operations of the business,

   less the cost of

   (c) Raw Stock from which production is derived,

   (d) supplies consisting of materials consumed directly in the conversion of such Raw Stock into Finished Stock, or in supplying the services sold by the Insured,

   (e) Merchandise sold including packaging materials therefor,

   (f) materials and supplies consumed directly in supplying the service(s) sold by the Insured,

   (g) service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract,

   (h) the difference between the cost of production and the nett selling price of Finished Stock which has been sold but not delivered.

No other costs shall be deducted in determining Gross Earnings.

In determining Gross Earnings due consideration shall be given to the experience of the business before the date of loss or damage and the probable experience thereafter had loss not occurred.

2. Raw Stock

Material in the state in which the Insured receives it for conversion into Finished Stock.

3. Stock in Process

Raw Stock which has undergone any ageing, seasoning, mechanical or other process of manufacture at the Insured's premises but which has not become Finished Stock.

4. Finished Stock

Stock manufactured by the Insured which in the ordinary course of the Insured's business is ready for packing, shipment or sale.

5. Merchandise

Goods kept for sale by the Insured which are not the product of manufacturing operations conducted by the Insured.

6. Normal

The condition that would have existed had no loss occurred.

14/12/05
Ref 5039 (amended)

**EXTRA EXPENSE EXTENSION**

In consideration of the premium paid and subject to the EXCLUSIONS, CONDITIONS AND LIMITATIONS of the Policy to which this Extension is attached, and also to the following ADDITIONAL CONDITIONS AND EXCLUSIONS, this Insurance is extended to cover the necessary Extra Expense incurred by the Insured in order to continue as nearly as practicable the normal conduct of the Insured's business following Direct Physical Loss or Damage as covered by the Policy to which this Extension is attached, to the Property Insured.

**DEFINITION OF EXTRA EXPENSE**

"Extra Expense" means the excess (if any) of the total cost during the period of restoration chargeable to the conduct of the Insured's business over and above the total cost that would normally have been incurred to conduct the Insured's business during the same period had no loss occurred.

The term "Extra Expense" includes the reasonable extra cost of temporary repair or of expediting the repair or replacement of such damaged property of the Insured, including overtime and the extra cost of express or other rapid means of transportation; and shall also include the cost incurred in obtaining property for temporary use during the period of restoration necessarily required for the conduct of the Insured's business.

The period of restoration shall be limited to the time required, with the exercise of due diligence and dispatch, to repair, rebuild or replace such damaged or destroyed property, commencing with the date of such damage or destruction and not limited by the expiration date of this Policy. However, the period of restoration shall not exceed twelve (12) calendar months.

**CONDITIONS**

1.  Direct Loss or Damage

    No claim shall be payable under this Extension unless and until a claim has been paid, or liability admitted, in respect of Direct Physical Loss or Damage to property insured under the Policy to which this Extension is attached and which gave rise to Extra Expense.

    This Condition shall not apply if no such payment shall have been made, or liability admitted, solely owing to the operation of a Deductible in said Policy which excludes liability for losses below a specified amount.

2.  Resumption of Operations

    It is a condition of this Policy that, as soon as practicable, the Insured shall resume normal operation of the business and shall dispense with such Extra Expense.

3.  Salvage

    At the end of the period of restoration, any salvage value remaining in property obtained for temporary use shall be taken into consideration in the determination of such Extra Expense.

**LIMITATION**

The most the Underwriters will be liable to pay for necessary Extra Expense in each calendar month is one-twelfth (1/12th) of the Sum Insured stated in the Schedule.

## EXCLUSIONS

This Extension does not insure against:

1. increase in Extra Expense resulting from interference at the insured premises, by strikers or other persons, with rebuilding, repairing or replacing the property or with the resumption or continuation of operation;

2. increase in Extra Expense by the suspension, lapse, or cancellation of any lease, license, contract, or order;

3. increase in Extra Expense caused by the enforcement of any ordinance or law regulating the use, reconstruction, repair or demolition of any property insured hereunder;

4. Loss of Earnings or any other consequential loss.


REF 5043 (amended)

## CANCELLATION CLAUSE

NOTWITHSTANDING anything contained in this Insurance to the contrary this Insurance may be cancelled by the Assured at any time by written notice or by surrender of this Contract of Insurance. This Insurance may also be cancelled by or on behalf of the Underwriters by delivering to the Assured or by mailing to the Assured, by registered, certified or other first class mail, at the Assured's address as shown in this Insurance, written notice stating when, not less than thirty (30) days (ten (10) days for non-payment of premium) thereafter, the cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and this Insurance shall terminate at the date and hour specified in such notice.

If this Insurance shall be cancelled by the Assured the Underwriters shall retain the customary short rate proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the Earned Premium hereon or the customary short rate proportion of any Minimum Premium stipulated herein whichever is the greater.

If this Insurance shall be cancelled by or on behalf of the Underwriters the Underwriters shall retain the pro rata proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the Earned Premium hereon or the pro rata proportion of any Minimum Premium stipulated herein whichever is the greater.

Payment or tender of any Unearned Premium by the Underwriters shall not be a condition precedent to the effectiveness of Cancellation but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

REF 1331

## WAR AND CIVIL WAR EXCLUSION CLAUSE

Notwithstanding anything to the contrary contained herein this Policy does not cover Loss or Damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

REF 464

## TERRORISM EXCLUSION

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

But, if the act of terrorism occurs in an "Exception State" and results in fire, we will pay for the loss or damage in such "Exception State" caused by that fire, but only to the extent, if any, required by the applicable Standard Fire Policy statute(s) in such state. However, this exception applies only to direct loss or damage by fire to covered property and not to any insurance provided for time element coverages, including but not limited to business interruption and extra expense. In no event shall this policy be construed to give coverage beyond the minimum requirements of the applicable Standard Fire Policy Statute (and amendments thereto) in existence as of the effective date of the policy and governing such requirements with respect to any acts of terrorism. If the applicable law or regulation in any state permits the Commissioner or Director of Insurance or anyone in a similar position to grant the insurer approval to vary the terms and conditions of the Standard Fire Policy, and such approval has been granted in that state as of the effective date of this policy, this policy shall not provide coverage beyond the minimum requirements of the terms and conditions approved by the Commissioner or Director of Insurance or person in a similar position.

"Exception state" means a state which at the time of policy effective date, requires that the coverage provided under this policy meet or exceed coverage provided under a Standard Fire Policy.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorist exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this policy, such as losses excluded by a Nuclear Hazard Exclusion or a war exclusion.

All other terms and conditions remain unchanged.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

REF 2920a

**POLICY NUMBER:**   RK77364A22

**COMMERCIAL PROPERTY**

# LIMITATIONS ON COVERAGE FOR ROOF SURFACING

This endorsement modifies insurance provided under the:

Windstorm and/or Hail Insurance Wording

### SCHEDULE

| Premises Number | Building Number | Indicate Applicability (Paragraph A. and/or Paragraph B.) |
|---|---|---|
|  |  |  |
| 1 | 1 and 2 | B |
|  |  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following applies with respect to loss or damage by **Windstorm and/or Hail** to a building or structure identified in the Schedule as being subject to this Paragraph **A.:**

Replacement Cost coverage (if otherwise applicable to such property) does not apply to roof surfacing. Instead, we will determine the value of roof surfacing at actual cash value as of the time of loss or damage.

**B.** The following applies with respect to loss or damage by **windstorm and/or hail** to a building or structure identified in the Schedule as being subject to this Paragraph **B.:**

We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

**C.** For the purpose of this endorsement, roof surfacing refers to the shingles, tiles, cladding, metal or synthetic sheeting or similar materials covering the roof and includes all materials used in securing the roof surface and all materials applied to or under the roof surface for moisture protection, as well as roof flashing.

This wording contains material under copyright from Insurance VS Services Office, Inc., 2011

U.S.A. & CANADA

## LAND, WATER AND AIR EXCLUSION

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure land (including but not limited to land on which the insured property is located), water or air, howsoever and wherever occurring, or any interest or right therein.

## SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION

Notwithstanding any provision to the contrary within the Policy of which this Endorsement forms part (or within any other Endorsement which forms part of this Policy), this Policy does not insure:

    (a)    any loss, damage, cost or expense, or

    (b)    any increase in insured loss, damage, cost or expense, or

    (c)    any loss, damage, cost, expense, fine or penalty, which is incurred, sustained or imposed by order, direction, instruction or request of, or by any agreement with, any court, government agency or any public, civil or military authority, or threat thereof, (and whether or not as a result of public or private litigation),

which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a peril insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.

The term "any kind of seepage or any kind of pollution and/or contamination" as used in this Endorsement includes (but is not limited to):

    (a)    seepage of, or pollution and/or contamination by, anything, including but not limited to, any material designated as a "hazardous substance" by the United States Environmental Protection Agency or as a "hazardous material" by the United States Department of Transportation, or defined as a "toxic substance" by the Canadian Environmental Protection Act for the purposes of Part II of that Act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any other Federal, State, Provincial, Municipal or other law, ordinance or regulation; and

    (b)    the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

## DEBRIS REMOVAL ENDORSEMENT

THIS ENDORSEMENT CONTAINS PROVISIONS WHICH MAY LIMIT OR PREVENT RECOVERY UNDER THIS POLICY FOR LOSS WHERE COSTS OR EXPENSES FOR DEBRIS REMOVAL ARE INCURRED.

Nothing contained in this Endorsement shall override any Seepage and/or Pollution and/or Contamination Exclusion or any Radioactive Contamination Exclusion or any other Exclusion applicable to this Policy.

Any provision within this Policy (or within any other Endorsement which forms part of this Policy) which insures debris removal is cancelled and replaced by the following:

1.  In the event of direct physical damage to or destruction of property, for which Underwriters hereon agree to pay, or which but for the application of a deductible or underlying amount they would agree to pay (hereinafter referred to as "Damage or Destruction"), this Policy also insures, within the Sum Insured, subject to the limitations and method of calculation below, and to all the other terms and conditions of the Policy, costs or expenses;

    (a)  which are reasonably and necessarily incurred by the Assured in the removal, from the premises of the Assured at which the Damage or Destruction occurred, of debris which results from the Damage or Destruction; and

    (b)  of which the Assured becomes aware and advises the amount thereof to Underwriters hereon within one year of the commencement of such Damage or Destruction.

2.  In calculating the amount, if any, payable under this Policy for loss where costs or expenses for removal of debris are incurred by the Assured (subject to the limitations in paragraph 1 above):

    (a)  the maximum amount of such costs or expenses that can be included in the method of calculation set out in (b) below shall be the greater of USD25,000 (twenty-five thousand dollars) or 10% (ten percent) of the amount of the Damage or Destruction from which such costs or expenses result; and

    (b)  the amount of such costs or expenses as limited in (a) above shall be added to:
        (i)   the amount of the Damage or Destruction; and
        (ii)  all other amounts of loss, which arise as a result of the same occurrence, and for which Underwriters hereon also agree to pay, or which but for the application of a deductible or underlying amount they would agree to pay; and

    the resulting sum shall be the amount to which any deductible or underlying amount to which this Policy is subject and the limit (or applicable sub-limit) of this Policy, shall be applied.

REF 2340

## PROPERTY CYBER AND DATA EXCLUSION

1    Notwithstanding any provision to the contrary within this Policy or any endorsement thereto this Policy excludes any:

    1.1    Cyber Loss;

    1.2    loss, damage, liability, claim, cost, expense of whatsoever nature directly or indirectly caused by, contributed to by, resulting from, arising out of or in connection with any loss of use, reduction in functionality, repair, replacement, restoration or reproduction of any Data, including any amount pertaining to the value of such Data;

    regardless of any other cause or event contributing concurrently or in any other sequence thereto.

2    In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

3    This endorsement supersedes and, if in conflict with any other wording in the Policy or any endorsement thereto having a bearing on Cyber Loss or Data, replaces that wording.

### Definitions

4    Cyber Loss means any loss, damage, liability, claim, cost or expense of whatsoever nature directly or indirectly caused by, contributed to by, resulting from, arising out of or in connection with any Cyber Act or Cyber Incident including, but not limited to, any action taken in controlling, preventing, suppressing or remediating any Cyber Act or Cyber Incident.

5    Cyber Act means an unauthorised, malicious or criminal act or series of related unauthorised, malicious or criminal acts, regardless of time and place, or the threat or hoax thereof involving access to, processing of, use of or operation of any Computer System.

6    Cyber Incident means:

    6.1    any error or omission or series of related errors or omissions involving access to, processing of, use of or operation of any Computer System; or

    6.2    any partial or total unavailability or failure or series of related partial or total unavailability or failures to access, process, use or operate any Computer System.

7    Computer System means:

    7.1    any computer, hardware, software, communications system, electronic device (including, but not limited to, smart phone, laptop, tablet, wearable device), server, cloud or microcontroller including any similar system or any configuration of the aforementioned and including any associated input, output, data storage device, networking equipment or back up facility,

    owned or operated by the Insured or any other party.

8    Data means information, facts, concepts, code or any other information of any kind that is recorded or transmitted in a form to be used, accessed, processed, transmitted or stored by a Computer System.

REF 5401

## BIOLOGICAL OR CHEMICAL MATERIALS EXCLUSION

It is agreed that this Insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

REF 2962

## USA HURRICANE MINIMUM EARNED PREMIUM ENDORSEMENT

Notwithstanding anything contained herein to the contrary, in the event you cancel this policy, whether directly or indirectly, we reserve the right to retain a minimum 35% of the Premium stated herein.

However, the following terms and conditions will apply to this policy where the peril of windstorm is included:

1. If you cancel this policy, remove a location or reduce the amount of Insurance on a location that is within 75 miles of the Atlantic Ocean and/or the Gulf of Mexico in the states of North Carolina thru to Texas inclusive, and coverage existed any time during the period of June 1st to November 1st, the amount of premium we will return will be the Unearned Premium for the location. The Unearned Premium is the annual premium for the policy (or for the location removed or coverage reduced, as applicable) multiplied by the Unearned Factor noted below. The location premium is the 100% annual rate multiplied by the location value as scheduled in the most current Statement of Values on file with us.

### 1 year Policy

| Days Policy In Force | Unearned Factor |
|---|---|
| 001 to 180 | 25% |
| 181 to 210 | 20% |
| 211 to 240 | 15% |
| 241 to 270 | 10% |
| 271 to 300 | 5.0% |
| 301 to 330 | 2.5% |
| 331 to 365 | 0.0% |

2. The provisions of this endorsement replace any short rate provisions stipulated in this policy for all locations that are within 75 miles of the Atlantic Ocean and/or the Gulf of Mexico in the states of North Carolina thru to Texas inclusive, and coverage existed any time during the period of June 1st to November 1st.

3. For the purpose of this Endorsement: -

   (a) Wherever the term 'we' or 'us' is used it is deemed to mean Insurers.
   (b) Wherever the term 'you' is used it is deemed to mean the Assured.

All other terms, clauses and conditions remain unaltered

**V.2**

## SANCTION LIMITATION AND EXCLUSION CLAUSE

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

REF3100
15 September 2010

## U.S. TERRORISM RISK INSURANCE ACT OF 2002 AS AMENDED
## NOT PURCHASED CLAUSE

*This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.*

It is hereby noted that the Underwriters have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

REF 5390

<u>**Attaching to and Forming part of Certificate Number:      RK77364A22**</u>

| Bell & Clements: B0759RP03500A22 Hereon: (100%) | |
|---|---|
| 100.0000% | Great Lakes Insurance SE |

**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**
**IN AND FOR BREVARD COUNTY, FLORIDA**
**CIVIL DIVISION**

**SFT IV, LLC,**
**MOS18 LLC &**
**2206 AVENUE A LLC,**
        **Plaintiff,**

                                       **Case No.:**      **052023CA043363XXXXXX**

**v.**

**GREAT LAKES INSURANCE SE,**
        **Defendant.**
_____/

## CASE MANAGEMENT PLAN

### (GENERAL)

**The parties are to meet, review, and discuss the Case Management Plan to agree upon dates according to the guidelines set forth in the above Case Management Plan. The parties are to sign the certification below and submit the proposed Case Management Order with the agreed upon dates to the Court for approval and signature.**

| | |
|---|---|
| 1. Date of First Response (i.e. Answer, Notice of appearance, Motion for Extension of Time, Motion to Dismiss) | The date of the first filing |
| 2. Deadline for adding new parties, amendment of pleadings | Should be 60-90 days since response date |
| 3. Deadline for Witness & Exhibit List (Witnesses MUST be listed by actual NAME of the witness, and not by designation (i.e., use of such designations as "Corporate Representative," "Records Custodian," "Adjustor," or "IME Doctor" standing alone is insufficient) | Should be 60-90 days before Trial |
| 4. Deadline for Expert Disclosure | Should be 150-180 days prior to projected trial date for Plaintiff |
| (Parties should furnish opposing counsel with the Names and addresses of all expert witnesses under Rule 1.390(a) to be called at trial and all information regarding expert testimony that is required by Rule 1.28(b)(5). Each party is limited to one expert per specialty. No other expert testimony should be permitted at trial. Information furnished pursuant to this paragraph should be timely filed with the Clerk of Court. | Should be 120-150 days prior to projected trial date for Defendant |
| 5. Objections to pleadings | Should be resolved 150-180 days prior to projected trial date |
| 6. Deadline for Discovery Completion (including Depositions) | Should be 15-30 days prior to projected trial date |

1

| 7. Deadline for Dispositive Motions, including *Daubert* Motions- Failure to do so shall constitute a waiver at Trial of any Daubert related evidence objection or issue Responsibility for scheduling of the Hearing shall be upon the party filing the Motion or Objection. | Should be heard 15-30 days prior to projected trial date |
|---|---|
| 8. Deadline for Mediation: | Should be 45-60 days prior projected trial date |
| 9. Trial Date | Must include length of trial period and projected date trial is desired to commence 18 months from date of the Case Mgmt Plan and submission of Case Management Order to Court |

**I hereby certify that I have that all parties have met and conferred regarding all proposed dates for the Case Management Plan and Case Management Order and certify that all dates proposed in the Case Management Order have been agreed to by the parties.**

**Date: _____**

**Signature of Counsel and Unrepresented Parties. Counsel must state FL Bar number. Unrepresented parties must include email address for service.**

2

**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR BREVARD COUNTY, FLORIDA
CIVIL DIVISION**

**SFT IV, LLC,
MOS18 LLC &
2206 AVENUE A LLC,**
        **Plaintiff,**

                                     **Case No.:**     **052023CA043363XXXXXX**

**v.**

**GREAT LAKES INSURANCE SE,**
        **Defendant.**
_____/

**CASE MANAGEMENT ORDER
(GENERAL)**

Pursuant to the dictates of Administrative Order AOSC20-23 of the Florida Supreme Court, and AO 21-24, Eighteenth Judicial Circuit, it is, hereby,

**ADJUDGED** that the following deadlines are applicable to this action, and that same will be strictly applied by the Court:

The projected date of trial for this matter is the trial docket beginning January, 2025. A firm trial date will be ordered by the presiding judge when this matter is at issue and notice as to same is filed in accordance with Rule 1.440, Fla. R. Civ. P.

Any request(s) for the addition of new parties, or amendments to the pleadings, shall be served within ninety (90) days of the date of this Order.

The fact witnesses of all parties shall be disclosed to all other parties no later than sixty (60) days prior to the above projected trial date.

All of Plaintiff's Expert Witnesses shall be disclosed to all other parties no later than one hundred twenty (120) days prior to the above projected trial date. Defendant's Expert Witnesses shall be disclosed to all other parties within 30 days thereafter.

All fact AND expert discovery shall be completed no later than ninety (90) days prior to the above projected trial date.

All objections to the pleadings, and all pre-trial motions shall be resolved no later than days prior to the above projected trial date.

Mediation shall be completed no later than one hundred twenty (120) days prior to the above projected trial date.

ORDER

**THE COURT,** having reviewed the preceding Case Management Dates finding them to be satisfactory. Accordingly, it is hereby **ORDERED** that

1.     **COMPLIANCE WITH THIS CASE MANAGEMENT ORDER:** The parties shall strictly comply with the terms of this Case Management Plan and Case Management Order unless otherwise ordered by the Court. FAILURE TO COMPLY WITH ALL REQUIREMENTS OF THIS ORDER WILL RESULT IN THE IMPOSITION OF SANCTIONS.

2.     **ADDITIONAL EIGHTEENTH CIRCUIT AND DIVISION SPECIFIC GUIDELINES:** All counsel and unrepresented parties shall familiarize themselves and comply with the requirements of the following: (i) **Amended Administrative Order Establishing the Eighteenth Judicial Circuit Courtroom Decorum Policy (AO 09-06)**; and (ii) **any division-specific guidelines and policies that may be applicable**.

3.     **MODIFICATION OF THIS ORDER:** The parties may not, individually or by agreement, alter or extend the deadlines in this Order, or waive any of the provisions of this Order. The provisions of this Order may be modified only upon motion/stipulation and Court order in accordance with applicable law.

4.     **NOTICES FOR TRIAL:** Within ten (10) days of the case being at issue as defined by Rule 1.440, Fla. R. Civ. P., or within ten (10) days from the date of this Order if the case has been at issue longer than ten (10) days, the Plaintiff shall confer with opposing counsel/party regarding the anticipated length of trial and file a Notice for Trial. The Plaintiff shall forward a copy of the Notice for Trial to the Case Manager at the email address noted on the Eighteenth Judicial Circuit website.

5.     **DISCOVERY:** All counsel and unrepresented parties shall familiarize themselves with the current edition of the Florida Handbook on Civil Discovery Practice and seek to resolve discovery issues without court intervention whenever possible.

6.     **SERVICE OF THIS ORDER:** Counsel is ordered to promptly serve and file proof with the Clerk, no more than five (5) business days from the date of this Order that all *pro se* parties, subsequently named or appearing herein, have been served copies of this Order. In the event a party is unrepresented and has not designated an email address for purposes of electronic service, counsel for Plaintiff shall be responsible for serving this Order and all future orders of the Court via a non-electronic means (U.S. mail, Federal Express or the equivalent) and shall file a Certificate of Service with the Court indicating who was served, the date of service, and the method of service (including any address or email used) within three (3) business days. If Plaintiff is unrepresented, Counsel for the Defendant shall have this same obligation. If all parties are unrepresented, the Plaintiff shall provide stamped addressed envelopes to the Court with submission of this and any other proposed Order.

7.     **SETTLEMENT:** *The case will not be removed from the docket until all documents necessary for closure of the case are filed with the Clerk and notification has been provided to the judicial assistant. A notice of settlement is not sufficient to remove the case from the trial docket.*

**DONE AND ORDERED** this_____day of_____, 2023, in Viera, Brevard County, Florida.

_____
CIRCUIT JUDGE

*A true and correct copy of the foregoing was distributed to all parties by filing and service via the eportal to all attorney(s)/interested parties identified on the eportal Electronic Service List.*

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator in your county at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days. If you are hearing or voice impaired, call 711.**

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
## IN AND FOR BREVARD COUNTY, FLORIDA
## CIRCUIT CIVIL DIVISION

SFT IV, LLC,
MOS18 LLC &
2206 AVENUE A LLC,
    **Plaintiffs,**

               **Case No.: 052023CA043363XXXXXX**

**v.**

**GREAT LAKES INSURANCE SE,**
    **Defendant.**
_____/

<u>SUMMONS</u>

THE STATE OF FLORIDA
GREETINGS:

    YOU ARE HEREBY COMMANDED to serve this summons and a copy of the complaint in the above-styled cause upon the Defendant:

      Great Lakes Insurance SE
      c/o Florida Chief financial Officer as RA
      Service of Process Section
      200 East Gaines Street
      Tallahassee, Florida 32399

    The Defendant is hereby required to serve written defenses to said complaint on Plaintiffs' attorney, whose name and address is:

      Andrew P. McDonald, Esquire
      David D. Barnhill, Esquire
      Ryan L. Gontrum, Esquire,
      McDonald & Barnhill, P.A.
      505 S. Magnolia Ave
      Tampa, FL 33606
      eservice@McDonaldBarnhill.com

within 20 days after service of this summons upon said defendant, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on plaintiffs' attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint.

    WITNESS my hand and seal of said court on _____, 2023.

          Clerk of Circuit Court

          By_____
           Deputy Clerk

SUMMONS
PERSONAL SERVICE ON AN INDIVIDUAL

IMPORTANT

A lawsuit has been filed against you.  You have 20 calendar days after this summons is served on you to file a written response to the attached complaint in this Court.  A phone call will not protect you; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case.  If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court.  There are other legal requirements.  You may want to call an attorney right away.  If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court, you must also mail or take a carbon copy or photocopy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado immediatamente.  Si so conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta sue respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandate o Abogodao del Demandante).

IMPORTANT

Des poursuites judiciaries ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coupe de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre response ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations jurdiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre response ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

_s/Andrew P. McDonald_
Andrew P. McDonald, No.: 805661
David D. Barnhill, Esquire, No.: 90442
Ryan L. Gontrum, Esquire, No: 1004730
505 S. Magnolia Ave
Tampa, Florida 33606
(813) 265-2020 telephone, (813) 200-2030 facsimile

*In accordance with the Americans with Disabilities Act, Persons Needing a Special Accommodation to Participate in This Proceeding Should Contact A.D.A. Coordination office Not Later Than 7 Days Prior to the Proceeding or Via Florida Relay Service for the Hearing Impaired at 1-800-955-8771 (T.D.D.)

Filing # 182605742 E-Filed 09/26/2023 12:53:57 PM

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
## IN AND FOR BREVARD COUNTY, FLORIDA
## CIVIL DIVISION

SFT IV, LLC,
MOS18 LLC &
2206 AVENUE A LLC,
          Plaintiff,

Case No.:      052023CA043363XXXXXX

v.

GREAT LAKES INSURANCE SE,
          Defendant.
_____/

## CASE MANAGEMENT PLAN

### (GENERAL)

**The parties are to meet, review, and discuss the Case Management Plan to agree upon dates according to the guidelines set forth in the above Case Management Plan. The parties are to sign the certification below and submit the proposed Case Management Order with the agreed upon dates to the Court for approval and signature.**

| | |
|---|---|
| 1. Date of First Response (i.e. Answer, Notice of appearance, Motion for Extension of Time, Motion to Dismiss) | The date of the first filing |
| 2. Deadline for adding new parties, amendment of pleadings | Should be 60-90 days since response date |
| 3. Deadline for Witness & Exhibit List (Witnesses MUST be listed by actual NAME of the witness, and not by designation (i.e., use of such designations as "Corporate Representative," "Records Custodian," "Adjuster," or "IME Doctor" standing alone is insufficient) | Should be 60-90 days before Trial |
| 4. Deadline for Expert Disclosure | Should be 150-180 days prior to projected trial date for Plaintiff |
| (Parties should furnish opposing counsel with the Names and addresses of all expert witnesses under Rule 1.390(a) to be called at trial and all information regarding expert testimony that is required by Rule 1.28(b)(5). Each party is limited to one expert per specialty. No other expert testimony should be permitted at trial. Information furnished pursuant to this paragraph should be timely filed with the Clerk of Court. | Should be 120-150 days prior to projected trial date for Defendant |
| 5. Objections to pleadings | Should be resolved 150-180 days prior to projected trial date |
| 6. Deadline for Discovery Completion (including Depositions) | Should be 15-30 days prior to projected trial date |

1

| 7. Deadline for Dispositive Motions, including *Daubert* Motions- Failure to do so shall constitute a waiver at Trial of any Daubert related evidence objection or issue<br>Responsibility for scheduling of the Hearing shall be upon the party filing the Motion or Objection. | Should be heard 15-30 days prior to projected trial date |
|---|---|
| 8. Deadline for Mediation: | Should be 45-60 days prior projected trial date |
| 9. Trial Date | Must include length of trial period and projected date trial is desired to commence 18 months from date of the Case Mgmt Plan and submission of Case Management Order to Court |

**I hereby certify that I have that all parties have met and conferred regarding all proposed dates for the Case Management Plan and Case Management Order and certify that all dates proposed in the Case Management Order have been agreed to by the parties.**

**Date:** _____

**Signature of Counsel and Unrepresented Parties. Counsel must state FL Bar number. Unrepresented parties must include email address for service.**

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
## IN AND FOR BREVARD COUNTY, FLORIDA
## CIVIL DIVISION

**SFT IV, LLC,**
**MOS18 LLC &**
**2206 AVENUE A LLC,**
       **Plaintiff,**

                                **Case No.:**     **052023CA043363XXXXXX**

**v.**

**GREAT LAKES INSURANCE SE,**
       **Defendant.**
_____/

### CASE MANAGEMENT PLAN

### (GENERAL)

**The parties are to meet, review, and discuss the Case Management Plan to agree upon dates according to the guidelines set forth in the above Case Management Plan. The parties are to sign the certification below and submit the proposed Case Management Order with the agreed upon dates to the Court for approval and signature.**

| | |
|---|---|
| 1. Date of First Response (i.e. Answer, Notice of appearance, Motion for Extension of Time, Motion to Dismiss) | The date of the first filing |
| 2. Deadline for adding new parties, amendment of pleadings | Should be 60-90 days since response date |
| 3. Deadline for Witness & Exhibit List (Witnesses MUST be listed by actual NAME of the witness, and not by designation (i.e., use of such designations as "Corporate Representative," "Records Custodian," "Adjuster," or "IME Doctor" standing alone is insufficient) | Should be 60-90 days before Trial |
| 4. Deadline for Expert Disclosure | Should be 150-180 days prior to projected trial date for Plaintiff |
| (Parties should furnish opposing counsel with the Names and addresses of all expert witnesses under Rule 1.390(a) to be called at trial and all information regarding expert testimony that is required by Rule 1.28(b)(5). Each party is limited to one expert per specialty. No other expert testimony should be permitted at trial. Information furnished pursuant to this paragraph should be timely filed with the Clerk of Court. | Should be 120-150 days prior to projected trial date for Defendant |
| 5. Objections to pleadings | Should be resolved 150-180 days prior to projected trial date |
| 6. Deadline for Discovery Completion (including Depositions) | Should be 15-30 days prior to projected trial date |

| 7. Deadline for Dispositive Motions, including *Daubert* Motions- Failure to do so shall constitute a waiver at Trial of any Daubert related evidence objection or issue<br>Responsibility for scheduling of the Hearing shall be upon the party filing the Motion or Objection. | Should be heard 15-30 days prior to projected trial date |
|---|---|
| 8. Deadline for Mediation: | Should be 45-60 days prior projected trial date |
| 9. Trial Date | Must include length of trial period and projected date trial is desired to commence 18 months from date of the Case Mgmt Plan and submission of Case Management Order to Court |

**I hereby certify that I have that all parties have met and conferred regarding all proposed dates for the Case Management Plan and Case Management Order and certify that all dates proposed in the Case Management Order have been agreed to by the parties.**

**Date:** _____

**Signature of Counsel and Unrepresented Parties. Counsel must state FL Bar number. Unrepresented parties must include email address for service.**

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
## IN AND FOR BREVARD COUNTY, FLORIDA
## CIRCUIT CIVIL DIVISION

SFT IV, LLC,
MOS18 LLC &
2206 AVENUE A LLC,
       **Plaintiffs,**

                              **Case No.: 052023CA043363XXXXXX**

**v.**

**GREAT LAKES INSURANCE SE,**
       **Defendant.**
_____/

<u>SUMMONS</u>

THE STATE OF FLORIDA
GREETINGS:

       YOU ARE HEREBY COMMANDED to serve this summons and a copy of the complaint in the above-styled cause upon the Defendant:

          Great Lakes Insurance SE
          c/o Florida Chief financial Officer as RA
          Service of Process Section
          200 East Gaines Street
          Tallahassee, Florida 32399

       The Defendant is hereby required to serve written defenses to said complaint on Plaintiffs' attorney, whose name and address is:

          Andrew P. McDonald, Esquire
          David D. Barnhill, Esquire
          Ryan L. Gontrum, Esquire,
          McDonald & Barnhill, P.A.
          505 S. Magnolia Ave
          Tampa, FL 33606
          eservice@McDonaldBarnhill.com

within 20 days after service of this summons upon said defendant, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on plaintiffs' attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint.

       WITNESS my hand and seal of said court on _____October 2_____, 2023.

                                 Clerk of Circuit Court

                                 By _____
                                 Deputy Clerk



SUMMONS
PERSONAL SERVICE ON AN INDIVIDUAL

IMPORTANT

A lawsuit has been filed against you.  You have 20 calendar days after this summons is served on you to file a written response to the attached complaint in this Court.  A phone call will not protect you; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case.  If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court.  There are other legal requirements.  You may want to call an attorney right away.  If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court, you must also mail or take a carbon copy or photocopy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas in dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado immediatamente.  Si so conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta sue respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogodo del Demanadante).

IMPORTANT

Des poursuites judiciaries ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coupe de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations jurdiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

|  |  |
|---|---|
| *In accordance with the Americans with Disabilities Act, Persons Needing a Special Accommodation to Participate in This Proceeding Should Contact A.D.A. Coordination office Not Later Than 7 Days Prior to the Proceeding or Via Florida Relay Service for the Hearing Impaired at 1-800-955-8771 (T.D.D.) | _s/Andrew P. McDonald_<br>Andrew P. McDonald, No.: 805661<br>David D. Barnhill, Esquire, No.: 90442<br>Ryan L. Gontrum, Esquire, No: 1004730<br>505 S. Magnolia Ave<br>Tampa, Florida 33606<br>(813) 265-2020 telephone, (813) 200-2030 facsimile |

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR BREVARD COUNTY, FLORIDA

SFT IV, LLC, MOS18 LLC &
2206 AVENUE A LLC,

        Plaintiffs,                             Case No. 2023-CA-043363

v.

GREAT LAKES INSURANCE SE,

        Defendant.

_____ /

## NOTICE OF APPEARANCE AS COUNSEL AND
## NOTICE OF DESIGNATION OF E-MAIL ADDRESSES

The law firm of Baker, Donelson, Bearman, Caldwell and Berkowitz, PC hereby gives

notice of the appearance of DAVID B. LEVIN, BRIAN W. FERNANDEZ, and KRISTEN

CALZADILLA as counsel on behalf of Defendant, GREAT LAKES INSURANCE SE, and

requests that copies of all pleadings, notices, orders, and other papers in this cause be henceforth

provided to the undersigned.

The undersigned counsel, pursuant to Florida Rule of Judicial Administration 2.516 (as

enacted effective September 1, 2012), hereby designate e-mail addresses for service of all orders,

process, pleadings, and other documents in this matter:

As to David B. Levin:

        Primary:      dlevin@bakerdonelson.com
        Secondary:  mymarks@bakerdonelson.com
                      tgoff@bakerdonelson.com

As to Brian W. Fernandez:

        Primary:      bfernandez@bakerdonelson.com
        Secondary:  mymarks@bakerdonelson.com
                      fllservice@bakerdonelson.com

As to Kristen Calzadilla:

| | |
|---|---|
| Primary: | kcalzadilla@bakerdonelson.com |
| Secondary: | mymarks@bakerdonelson.com |
| | fllservice@bakerdonelson.com |

Submitted October 25, 2023.

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
1 Financial Plaza, Suite 1620
Fort Lauderdale, Florida 33394
Telephone: (954) 768-1600
Counsel for Defendant

By:      */s/ David B. Levin*
David B. Levin
Florida Bar No.: 26394
dlevin@bakerdonelson.com
Brian W. Fernandez
Florida Bar No.: 1029848
bfernandez@bakerdonelson.com
Kristen Calzadilla
Florida Bar No.: 1035476
kcalzadilla@bakerdonelson.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Appearance was filed electronically and was sent by e-mail from the Florida Courts' E-Filing Portal system, unless otherwise noted below, on all counsel or parties of record listed below, this October 25, 2023.

Andrew P. McDonald, Esquire
David D. Barnhill, Esquire
Ryan L. Gontrum, Esquire
McDonald & Barnhill, P.A.
505 S. Magnolia Ave.
Tampa, FL 33606
eservice@mcdonaldbarnhill.com
Attorneys for Plaintiffs

*/s/ David B. Levin*

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR BREVARD COUNTY, FLORIDA

SFT IV, LLC, MOS18 LLC &
2206 AVENUE A LLC,

                Plaintiffs,                          Case No. 2023-CA-043363

v.

GREAT LAKES INSURANCE SE,

                Defendant.

_____ /

**DEFENDANT'S UNOPPOSED MOTION FOR EXTENSION OF TIME
TO RESPOND TO COMPLAINT**

      Defendant, GREAT LAKES INSURANCE SE ("Great Lakes" or "Defendant"), respectfully requests this Court enter an order granting it a brief extension of time to respond to Plaintiffs' Complaint. In support, Defendant states as follows:

      1.      On October 3, 2023, Defendant was served with process.

      2.      Defendant's response to the Complaint is due October 23, 2023.

      3.      The undersigned counsel was recently retained and needs additional time to investigate the allegations contained in Plaintiffs' Complaint, consult with Great Lakes regarding the availability of defenses to this lawsuit, obtain copies of documents and information, and prepare an appropriate response.

      4.      For these reasons, Great Lakes respectfully requests an extension of 14 days, until November 6, 2023, to file a response to the Complaint.

      5.      On October 23, 2023, the undersigned reached out via email to Plaintiffs' counsel to discuss this motion before filing same, and Plaintiffs' counsel has agreed to the relief requested.

      6.      This motion is being filed in good faith and not for the purpose of delay.

7.     Moreover, this brief extension will not prejudice the Plaintiffs because this lawsuit was recently initiated, there are no scheduled hearings or imminent deadlines, and Plaintiffs have agreed to the extension.

**WHEREFORE**, GREAT LAKES INSURANCE SE respectfully requests this Court enter an order granting it a 14-day extension of time to respond to the Complaint, through and including November 6, 2023, and for any and all other relief this Court deems just and proper.

Submitted October 25, 2023.

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
1 Financial Plaza, Suite 1620
Fort Lauderdale, Florida 33394
Telephone: (954) 768-1600
Counsel for Defendant

By:      */s/ David B. Levin*
David B. Levin
Florida Bar No.: 26394
dlevin@bakerdonelson.com
Brian W. Fernandez
Florida Bar No.: 1029848
bfernandez@bakerdonelson.com
Kristen Calzadilla
Florida Bar No.: 1035476
kcalzadilla@bakerdonelson.com

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion for Extension was filed electronically and was sent by e-mail from the Florida Courts' E-Filing Portal system on all counsel or parties of record listed below, this October 25, 2023.

Andrew P. McDonald, Esquire
David D. Barnhill, Esquire
Ryan L. Gontrum, Esquire
McDonald & Barnhill, P.A.
505 S. Magnolia Ave.
Tampa, FL 33606
eservice@mcdonaldbarnhill.com
Attorneys for Plaintiffs

*/s/ David B. Levin*

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR BREVARD COUNTY, FLORIDA

SFT IV, LLC, MOS18 LLC &
2206 AVENUE A LLC,

          Plaintiffs,                              Case No. 2023-CA-043363

v.

GREAT LAKES INSURANCE SE,

          Defendant.

_____/

## AGREED ORDER GRANTING DEFENDANT'S MOTION
## FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT

THIS MATTER came before the court on Defendant's Unopposed Motion for an Extension of Time to Respond to Complaint (the "Motion") filed on October 25, 2023. The Court having reviewed the motion, the court file, informed of the agreement of the parties, and being otherwise fully advised in the premises, it is

**ORDERED and ADJUDGED**:

1.       The Motion is **GRANTED**.

2.       The time for Defendant to file and serve its response to Plaintiff's Complaint is extended 14 days, through and including November 6, 2023.

ORDERED in chambers at Viera, Brevard County, Florida this 26TH day of October 2023.

_____
CURT JACOBUS
CIRCUIT JUDGE

Copies furnished to all parties of record.

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR BREVARD COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

SFT IV, LLC, MOS18 LLC &
2206 AVENUE A LLC,

          Plaintiffs,                         Case No. 2023-CA-043363

v.

GREAT LAKES INSURANCE SE,

          Defendant.

_____  /

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFF'S COMPLAINT**

Defendant, Great Lakes Insurance SE ("Great Lakes"), by and through its undersigned

counsel and pursuant to Fed. R. Civ. P. 8(b)-(c), hereby files its Answer and Affirmative Defenses

to Plaintiff's Complaint, and states as follows:[1]

      1.     Great Lakes is without knowledge of the allegation and therefore denies and

demands strict proof thereof.

      2.     Great Lakes admits that it is a surplus lines insurer permitted to transact business

in the State of Florida.

      3.     For jurisdictional purposes only, Great Lakes admits that Plaintiff is seeking

damages in excess of this Court's jurisdictional threshold, but specifically denies Plaintiff is

entitled to any recoverable damages.

---

[1] For purposes of filing this responsive pleading, Great Lakes tracks the form of Plaintiff's
Complaint, including the numbered paragraph for each allegation.

## COUNT 1: BREACH OF CONTRACT

4.     Great Lakes re-alleges and reasserts paragraphs 1 through 3 as if fully stated herein.

5.     Great Lakes admits only that Plaintiff has filed the instant lawsuit claiming breach of contract, but Great Lakes specifically denies any such breach occurred and demands strict proof thereof.

6.     Great Lakes denies the allegations in paragraph 6 of the Complaint as stated and demands strict proof thereof.  Great Lakes states that the Complaint does not attach a copy of the policy; therefore, denied, and strict proof demanded.  Great Lakes admits that it issued a Dwelling Fire Policy, which describes the location at 3455 Highway A1A, Melbourne Beach, FL 32951 (the "Property"), and is identified by policy number RK77364A22 (the "Policy").  Great Lakes further states that the Policy speaks for itself relative to its terms, conditions, coverages, and exclusions, and any statements made inconsistent therewith are expressly denied and strict proof is demanded.

7.     Great Lakes is without knowledge concerning the allegations in paragraph 7 of the Complaint, and so denies the same and demands strict proof thereof.

8.     Great Lakes denies the allegations in paragraph 8 of the Complaint and demands strict proof thereof.

9.     Great Lakes denies the allegations in paragraph 9 of the Complaint and demands strict proof thereof.

10.    Great Lakes denies the allegations in paragraph 10 of the Complaint as stated and demands strict proof thereof.

11.    Great Lakes denies the allegations in paragraph 11 of the Complaint and demands strict proof thereof.

12.     Great Lakes denies the allegations in paragraph 12 of the Complaint and demands strict proof thereof.

13.     Great Lakes denies the allegations in paragraph 13 of the Complaint and demands strict proof thereof.

14.     Great Lakes denies the allegations in paragraph 14 of the Complaint and demands strict proof thereof.

15.     Great Lakes denies the allegations in paragraph 15 of the Complaint and demands strict proof thereof.

16.     Great Lakes denies the allegations in paragraph 16 of the Complaint and demands strict proof thereof.

WHEREFORE, Great Lakes denies that Plaintiff is entitled to any of the relief requested in the unnumbered "WHEREFORE" clause following paragraph 16, and requests judgment be issued in its favor and against the Plaintiffs.

## GENERAL DENIAL

Great Lakes expressly denies any and all allegations not specifically admitted.

## AFFIRMATIVE DEFENSES

1.     Plaintiffs' claim is barred, in whole or in part, for each of those reasons set forth in Great Lakes' March 8, 2023, coverage determination letter, a copy of which is incorporated herein by reference.

2.     Plaintiffs' claim is barred to the extent they claim damages caused by or attributed to flooding, tidal, or surface water. Indeed, upon Great Lakes' investigation of the claim, its retained forensic engineer observed damages caused by storm surge, which is an excluded cause under the Policy, which states: "This policy DOES NOT INSURE AGAINST: Loss or damage

3

directly or indirectly caused by flood, surface water, waves, tidal waves, or tidal water, overflow of streams, rivers, lakes, ponds, or other bodies of water, or spray from all of the foregoing, all whether driven by wind or not." Resultingly, substantial portions of Plaintiffs' claim is barred.

3.      Plaintiffs' claim for damages to the interior of the property is barred because the policy does not provide coverage for the interior of the property unless the water entered through a wind-created opening in the walls or roof.  Here, Great Lakes' retained forensic engineer determined that some damage to the property stemmed from inadequately sealed portions of the walls and fenestrations, and not due to any direct wind damage to the walls or roof.  Notably, the Policy states: "This policy DOES NOT INSURE AGAINST: Loss or damage caused to the interior of buildings if such buildings are insured hereby unless loss or damage caused concurrently with and results from an aperture caused by the windstorm and/or hail." Resultingly, the Insureds' claim for interior damages are barred.

4.      Plaintiffs' claim is barred, in whole or in part, because Plaintiffs failed to "use due diligence and do and concur in doing all things reasonable to avoid or diminish any loss of or damage to the Property Insured."  *See* Due Diligence Conditions, Policy at 14 of 39.  Despite alleging extensive damage purportedly caused by a windstorm (Hurricane Nicole), Plaintiffs never contacted a mitigation company to tarp the roof or dry out the interior.  Accordingly, Plaintiffs' claim is barred because Plaintiffs neglected to use all reasonable means to save and preserve the Property, thereby breaching their post lost obligations.

5.      Plaintiffs' claim is barred, in whole or in part, because the claimed damages did occur within the Policy period. Pursuant to Great Lakes' investigation, many of the alleged damage occurred prior to the inception of the Policy. Accordingly, Plaintiff's claim is barred because the damage alleged is Existing Damage that occurred outside of the policy period.

4

6.     To the extent Plaintiffs are alleging damage to their roof, Plaintiffs' claim is barred because there is a Limitations on Coverage for Roof Surfacing Endorsement, which states: "We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, pitting, or otherwise superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred." Here, any such damage to the roof, which is denied to exist, would be merely cosmetic and not functional damage, and so would be entirely excluded by the Policy.

7.     To the extent Plaintiff seeks insurance proceeds for damage caused by mold, such coverage is expressly excluded from coverage pursuant to the Policy's Microorganism Exclusion. *See Policy* at 20 of 39.

8.     Plaintiffs' claim is barred to the extent that damages were exacerbated by the lack of conditioned air (ventilation/temperature control) following the storm, as it is believed high levels of humidity at the Property caused additional damages.

9.     Plaintiff is not entitled to recover attorney's fees because this lawsuit was not "filed for a legitimate purpose [nor] did the filing act as a necessary catalyst to resolve the dispute and force the insurer to satisfy its obligations under the insurance contract. For attorney's fees to be awarded, there must have been 'some dispute as to the amount owed by the insurer before the insured filed suit." *See People's Tr. Ins. Co. v. Polanco*, Case No. 4D22-559, 2023 WL 151310, at *1 (Fla. 4th DCA Jan. 11, 2023) (*citing State Farm Fla. Ins. Co. v. Lime Bay Condo., Inc.*, 187 So. 3d 932, 935 (Fla. 4th DCA 2016); *Lewis v. Universal Prop. & Cas. Ins. Co.*, 13 So. 3d 1079, 1081 (Fla. 4th DCA 2009). Prior to commencing this lawsuit, Plaintiff did not provide a competing

repair estimate, prepared on an actual cash value ("ACV") basis and accounting for the Policy's windstorm deductible.  Accordingly, Plaintiff never disputed Great Lakes' adjustment of the claim or its estimate of damages on an ACV basis, consistent with the terms of the Policy.  Accordingly, there was no bona fide dispute as to the amount of Plaintiff's damages when this lawsuit was filed, and thus, Plaintiff is not entitled to recover attorney's fees as a result of this lawsuit.  Indeed, any remedial estimate that Plaintiff may subsequently produce during this litigation is inadequate because Plaintiff deprived Great Lakes of the opportunity to consider such estimate before filing this lawsuit.

10.    Plaintiffs' claim is barred, in whole or in part, to the extent the damages observed to the property were attributable to excluded causes such as wear, tear, age-related deterioration, settlement, soil erosion, scour, corrosion, and deferred or inadequate maintenance.

11.    Without conceding that any coverage exists for this claim, any such covered damages would not exceed the Policy's windstorm deductible.

12.    Without conceding that any coverage exists for this claim, Plaintiffs are not entitled to any business interruption/income coverage, as the Property was not uninhabitable or not suited for its intended purposes due to wind forces, but instead on account of flood damages.

13.    Great Lakes states that any and all damages Plaintiffs seek to recover are subject to set-off, contribution, and/or recoupment.

<u>**RESERVATION OF DEFENSES**</u>

Great Lakes reserves its right to assert additional affirmative defenses that may be discovered or revealed as this matter proceeds through discovery.

6

**WHEREFORE**, having answered Plaintiffs' Complaint, Defendant, Great Lakes Insurance SE, requests that this Honorable Court enter judgment in its favor in all respects, deny Plaintiff's requested relief, and award any and all other such relief deemed just and proper.

Submitted November 7, 2023.

> **BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
> 1 Financial Plaza, Suite 1620
> Fort Lauderdale, Florida 33394
> Telephone: (954) 768-1600
> Counsel for Defendant
>
> By:     */s/ David B. Levin*
> David B. Levin
> Florida Bar No.: 26394
> dlevin@bakerdonelson.com
> Brian W. Fernandez
> Florida Bar No.: 1029848
> bfernandez@bakerdonelson.com
> Kristen Calzadilla
> Florida Bar No.: 1035476
> kcalzadilla@bakerdonelson.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Answer was filed electronically and was sent by e-mail from the Florida Courts' E-Filing Portal system on all counsel or parties of record listed below, this November 7, 2023.

> Andrew P. McDonald, Esquire
> David D. Barnhill, Esquire
> Ryan L. Gontrum, Esquire
> McDonald & Barnhill, P.A.
> 505 S. Magnolia Ave.
> Tampa, FL 33606
> eservice@mcdonaldbarnhill.com
> Attorneys for Plaintiffs

*/s/ David B. Levin*

8

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR BREVARD COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

SFT IV, LLC, MOS18 LLC &
2206 AVENUE A LLC,

              Plaintiffs,                       Case No. 2023-CA-043363

v.

GREAT LAKES INSURANCE SE,

              Defendant.

_____ /

## NOTICE OF FILING NOTICE OF REMOVAL

      Defendant, Great Lakes Insurance SE, hereby gives notice of filing its Notice of Removal,

a copy of which is attached.

      Submitted on December 18, 2023.

                                   **BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
                                   1 Financial Plaza, Suite 1620
                                   100 SE 3rd Avenue
                                   Fort Lauderdale, Florida 33394
                                   Telephone: (954) 768-1600
                                   Counsel for Defendant

                       By:      */s/ David B. Levin*_____
                                 David B. Levin
                                 Florida Bar No.: 26394
                                 dlevin@bakerdonelson.com
                                 Brian W. Fernandez
                                 Florida Bar No.: 1029848
                                 bfernandez@bakerdonelson.com
                                 Kristen Calzadilla
                                 Florida Bar No.: 1035476
                                 kcalzadilla@bakerdonelson.com

**Exhibit C**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Filing Notice of Removal was filed electronically and was sent by e-mail from the Florida Courts' E-Filing Portal system, unless otherwise noted below, on all counsel or parties of record listed below, this December 18, 2023.

        Andrew P. McDonald
        David D. Barnhill
        Ryan L. Gontrum
        McDonald & Barnhill, P.A.
        505 S. Magnolia Ave.
        Tampa, FL 33606
        eservice@mcdonaldbarnhill.com
        Attorneys for Plaintiffs

                        */s/ David B. Levin*